**UNITED STATES of America,**
**Plaintiff,**

v.

**Jane R. RINGLER, Executrix of the Last Will and Testament of Harold J. Ringler, Deceased, et al., Defendants.**

**Civ. A. 30887.**

United States District Court
N. D. Ohio, E. D.
July 9, 1958.

Sumnar Canary, U. S. Atty., Russell E. Ake, Asst. U. S. Atty., Cleveland, Ohio, for plaintiff.

Claude P. Herman and Frank E. Steel, Akron, Ohio, for defendant.

McNAMEE, District Judge.

The sole question presented is whether a mortgage from Oak Leaf Trailer Park, Inc. to Claud P. Herman and Stephen Wozniak to secure the payment of legal services which the mortgagees promised to perform is entitled to priority of payment over a tax lien of the United States against the property of Oak Leaf Trailer Park, Inc. The mortgage was executed on June 16, 1953 and filed for record with the Recorder of Summit County, Ohio on June 18, 1953. The tax lien of the Government against Oak Leaf Trailer Park, Inc., as transferee, was delivered to the Collector on August 3, 1953 and filed for record with the Recorder of Summit County, Ohio on August 5, 1953. The Firestone Bank of Akron, Ohio holds a mortgage on the same property dated March 28, 1950 securing the payment of a note for $10,000. No question is raised as to the priority of the mortgage of the Firestone Bank.

The facts essential to an understanding of the decision reached herein are:

For many years during his lifetime Harold J. Ringler, deceased, was engaged in the real estate business in Summit County, Ohio. In the year 1950 he was the owner of several parcels of real estate and of a substantial number of mortgages on properties sold to others. Ringler had failed to pay the full amount of his annual income taxes for the years 1939 to 1950. In the latter year he engaged Stephen Wozniak as his counsel, and Wozniak continued to serve as such until the summer of 1953, during which time the Government was investigating the civil and possible criminal tax liabilities of Ringler. Wozniak received about $5,000 from Ringler as payment in full for services rendered during the above period. Wozniak also received advice from his office associate, Herman, in connection with the matters about which Ringler consulted Wozniak. On August 1, 1952 Oak Leaf Trailer Park, Inc. was organized and immediately thereafter

the property described in the mortgage here in question was transferred by Ringler and his wife, Jane R. Ringler, to Oak Leaf Trailer Park, Inc. without any consideration except the issuance of stock in the corporation to the grantees. The property transferred to Oak Leaf Trailer Park, Inc. was the most valuable parcel of real estate owned by Ringler. Part of this property was used as a trailer park. Several apartment buildings were located thereon and a tavern was operated on the premises by Ringler, who was the owner of a D-5 liquor permit issued by the Department of Liquor Control of the state of Ohio. On March 4, 1953 Oak Leaf Trailer Park, Inc. transferred to The Home Sales & Building Company, another Ringler corporation, a portion of the property conveyed by Ringler to Oak Leaf Trailer Park, Inc. On June 2, 1953 jeopardy assessments were made by the Commissioner of Internal Revenue against Ringler and his wife, and the notice of tax liens was filed with the Recorder of Summit County, Ohio on August 27, 1953. On June 16, 1953 Ringler engaged the services of both Wozniak and Herman to represent him and Mrs. Ringler in opposing the tax claims of the Government. On the same date Ringler caused to be executed and delivered to Wozniak and Herman a mortgage of Oak Leaf Trailer Park, Inc. securing payment of a demand note of $20,000. As shown by oral testimony, the mortgage was given to secure the payment of the reasonable value of legal services to be rendered by Wozniak and Herman. These services were to be rendered in behalf of Harold J. Ringler, Jane R. Ringler, Oak Leaf Trailer Park, Inc. and Virginia Ellison, the latter two being transferees of Ringler. As stated above, the mortgage was filed for record with the Recorder of Summit County on June 18, 1953 and the transferee tax lien against Oak Leaf Trailer Park, Inc. was filed for record with the Recorder on August 5, 1953. In the fall of 1953 Herman and Wozniak filed several petitions in the Tax Court of the United States in behalf of Mr. and Mrs. Ringler, Virginia

Ellison and Oak Leaf Trailer Park, Inc. Before the tax cases came on for trial the Government, on March 8, 1954, filed this action to foreclose the tax liens against the Ringlers and their transferees and for the appointment of a receiver. A receiver was appointed by this Court on April 1, 1954. About two weeks after the appointment of the receiver Wozniak died, and Mary Wozniak was appointed Administratrix of his estate and substituted as a party in this action. About three months after the appointment of the receiver Harold J. Ringler died, and Mrs. Jane R. Ringler was appointed Executrix of his estate and made a party to this action. After Wozniak's death Herman continued to represent the Ringler interests. He represented them in a two day trial in the Tax Court, following which he prepared and submitted extensive briefs to that court. Herman also appeared at several of the hearings in this Court in connection with the receivership proceedings and also at the final hearing of this case and at the hearings on the various applications by the receiver to sell properties. There is no claim by the Government that the legal services rendered by Herman and Wozniak were unnecessary or that they were not rendered in good faith. It appears that on and after June 16, 1953 Wozniak, during his lifetime, and Herman at all times after said date, relied upon the mortgage as security for the payment of the reasonable value of legal services rendered by them. After the property of Oak Leaf Trailer Park, Inc. was sold, and upon inquiry by the Court at a special hearing, Herman stated that the reasonable value of the services rendered by himself and Wozniak in connection with the tax liability of the Ringler interests, including services rendered in connection with this case, was about $10,000. He stated that the reasonable value of the services rendered between June 16, 1953 and August 5, 1953 was $1,600. The Tax Court determined the tax liability of Jane R. Ringler, Executrix of the estate of Harold J. Ringler, deceased, for the years 1942 to 1947, inclusive, plus penalties

and interest for those years and for the year 1939 to be $207,069.66; that Jane R. Ringler, Executrix of the estate of Harold J. Ringler, deceased, and Jane R. Ringler, individually, were jointly and severally liable for income taxes, penalties and interest for the year 1950 in the amount of $22,714.66 and that Jane R. Ringler, Executrix of the estate of Harold J. Ringler, deceased, was liable for income taxes, penalties and interest for the years 1948 and 1949 in the sum of $20,095.59. The Tax Court also deter-. mined that Oak Leaf Trailer Park, Inc., transferee, was liable to the extent of $56,100 plus interest from August 1, 1952. No appeal was taken from the findings of the Tax Court, which were incorporated in and made a part of the final decree of this Court. At the time of the transfer of the real estate from Harold J. Ringler and Jane R. Ringler to Oak Leaf Trailer Park, Inc. the transferors were either insolvent or were rendered insolvent as a result of said transfers. Oak Leaf Trailer Park, Inc. was insolvent or became insolvent by its transfers of real estate to The Home Sales & Building Company. The property described in the mortgage to Wozniak and Herman has been sold for an amount insufficient to pay the liens and the amount realized by the Receiver from all sources, including the unpaid balances due on mortgages delivered to the Director of Internal Revenue, is insufficient to pay the tax liabilities of Jane R. Ringler, Executrix, Jane R. Ringler, individually, and of Oak Leaf Trailer Park, Inc.

Relying on former Section 3672 of the Internal Revenue Act of 1939 (now Section 6323, 26 U.S.C.A.) the mortgagees contend that the tax lien of the Government against Oak Leaf Trailer Park, Inc. is invalid as against their prior recorded mortgage. Former Section 3672 provides that the tax lien of the Government shall not be valid against mortgagees, pledgees or judgment creditors until notice thereof has been filed in the office provided by the law of the state for such filing. The mortgage was filed for record more than a month and a half prior to the recordation of the tax lien of the United States. However, the Government contends that at the time the tax lien was recorded the mortgage lien was inchoate and imperfect and thus not entitled to priority. In Spokane County v. United States, 279 U.S. 80, 49 S.Ct. 321, 73 L.Ed. 621, in a proceeding involving the priority of debts to the United States owed by an insolvent debtor, the Supreme Court "launched the doctrine of the inchoate and general lien." Yale Law Journal, Vol. 63, p. 911 (1954). The doctrine was applied and extended in subsequent cases where the priority of the unsecured claims of the United States was at issue under Title 31 U.S.C.A. § 191. People of State of New York v. Maclay, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754; United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 357, 65 S.Ct. 304, 89 L.Ed. 294; People v. State of Ill. ex rel. Gordon v. Campbell, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348. In the last cited case the Supreme Court defined the elements of a "choate lien" as follows:

"The long established rule requires that the lien must be definite, and not merely ascertainable in the future by taking further steps, in at least three respects as of the crucial time. These are: (1) the identity of the lienor, United States v. Knott, 298 U.S. 544, 549–551, 56 S.Ct. 903, 80 L.Ed. 1321; (2) the amount of the lien, United States v. Waddill, Holland & Flinn, 323 U.S. 353, at pages 357–358, 65 S.Ct. 304, at page 307, 89 L.Ed. 294; and (3) the property to which it attaches, United States v. Waddill, Holland & Flinn, supra; United States v. State of Texas, supra [314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356]; People of State of New York v. Maclay, supra. It is not enough that the lienor has power to bring these elements, or any of them, down from broad generality to the earth of specific identity."

See also United States v. City of New Britain, Conn., 347 U.S. 81, at page 86, 74 S.Ct. 367, at page 370, 98 L.Ed. 520. In United States v. Security Trust & Savings Bank of San Diego, 340 U.S. 47, 71 S.Ct. 111, 113, 95 L.Ed. 53, the Supreme Court first applied the doctrine of the inchoate lien in a case involving the relative priority of a tax lien of the United States and an attachment lien filed in California where the federal tax lien was recorded subsequent to the date of the attachment but prior to the date the attaching creditor obtained judgment. In that case the court said:

"The effect of a lien in relation to a provision of federal law for the collection of debts owing the United States is always a federal question."

and held that the tax lien of the United States was superior to the inchoate attachment lien of the judgment creditor. The same question was presented in United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264. There the question was the relative priority as between a tax lien of the United States and an attachment lien under the laws of the state of Ohio. As in Security Trust & Savings Bank of San Diego, supra, the tax lien was filed for record subsequent to the attachment but prior to the date the attaching creditor obtained judgment. Even though the Supreme Court of Ohio had designated an attachment lien "an execution in advance" [Rempe & Son v. Ravens, 68 Ohio St. 113, 67 N.E. 282, 286] and the Ohio courts had treated attachments as perfected liens, the United States Supreme Court held that for federal tax purposes an attachment lien in Ohio is an inchoate lien [348 U.S. 211, 75 S.Ct. 241] "because at the time the attachment issued the fact and the amount of the lien were contingent upon the outcome of the suit for damages." In United States v. City of New Britain, Conn., 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520, it was held that the priority of each statutory lien there involved depended upon the time it attached to the property in question and became choate. In Unit-

ed States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 703, 97 L.Ed. 1071, the court rejected the determination of the New Hampshire state court that the assessment of the state tax in question was "in the nature of a judgment," and held the so-called judgment lien to be inchoate.

The Supreme Court has not yet passed upon the question involving the relative priority of a tax lien and a mortgage under Section 3672 where the tax lien was filed subsequent to the recording of a mortgage given to secure future advances. But the court's uniform policy of applying the doctrine of "the inchoate lien" in cases involving the relative priority of United States tax liens and judgment liens under Section 3672 seems clearly to forecast a similarly strict application of the doctrine in future cases involving the relative priority of United States tax liens and mortgages. It is safe to assume that in such a case the three-fold test of choateness as laid down in People of State of Ill. ex rel. Gordon v. Campbell, supra, and reiterated in United States v. City of New Britain, Conn., supra, will be applied to determine whether a prior recorded mortgage is a perfected lien entitled to priority. Proceeding on such assumption, it appears that here there is identity of lienors and identity of the property to which the mortgage lien attached, but on August 5, 1953, when the tax lien was recorded, the total amount secured by the mortgage was not known or ascertainable. Except as to the value of the services rendered between June 18, 1953 and August 5, 1953 the amount secured by the mortgage was contingent upon events occurring after August 5, 1953, and as to the value of services rendered subsequent to that date the mortgage was inchoate. While the authorities are divided on the question, there is abundant authority in support of the view that a mortgage to secure future advances which the mortgagee is obligated to make takes priority over a subsequent lien recorded before the future advances were made. 36 Am.J.

807, § 232 et seq.; 138 A.L.R. 580. Ohio is in accord with this view where the amount of future advances is definite and expressed in the mortgage instrument. Kuhn v. Southern Ohio Loan & Trust Co., 101 Ohio St. 34, 126 N.E. 820. However, whenever a question involving the relative priority of United States tax liens and other liens arises, courts are required to apply the test of choateness to the competing liens. Applying that test here, it must be held that as to the indefinite future advances (in the form of legal services) which were to be made after August 5, 1953, the mortgage lien is subordinate to the tax lien of the United States. The lien of the mortgage securing the value of services rendered between June 18, 1953 and August 5, 1953 stands on a different footing. As shown by the record, on August 5, 1953, legal services of the value of $1,600 had been rendered by the mortgagees in reliance upon the security of the mortgage. To that extent, therefore, the mortgage lien was not inchoate or imperfect. I am of the opinion that as to the amount of the mortgage lien securing such indebtedness the rule of first in time—first in right, applies. While the authorities are in conflict on the question whether a mortgage to secure future advances takes priority over a subsequent lien recorded before any of the advances are made, it is a rule of almost universal acceptance that such a mortgage has priority over subsequent liens to the extent of the advances made before the subsequent liens attach. 27 O.J. 175; 10 R.C.L. 429. The application of that principle here in favor of the priority of the mortgage lien to the extent of $1,600 results in no retroactive displacement of the tax lien of the United States which did not become valid and effective against the mortgage until August 5, 1953. It does not appear that the Government is opposed to such treatment of the mortgage lien. In its brief the Government suggests that if the mortgagees rendered legal services between the date of the recording of the mortgage and the date when the tax lien was filed for record, they probably would be entitled to a prior lien to the extent of the value of the services rendered during such a period.

Accordingly it is held that the mortgage to Wozniak and Herman is prior to the tax lien of the United States to the extent of $1,600, but, as to the balance claimed to be secured by the mortgage, the Government's lien has priority.

The liens hereinabove referred to have been transferred to the fund realized from the proceeds of the sale of the Oak Leaf Trailer Park property.

An order of distribution may be made in accordance with the foregoing.