[No. 35582.   Department One.   June 22, 1961.]

AMERICAN SURETY COMPANY OF NEW YORK, *Respondent,* v.
OSCAR SUNDBERG *et al., Defendants,* THE UNITED
STATES OF AMERICA, *Appellant.**

*Reported in 363 P. (2d) 99.

*Charles P. Moriarty (Charles K. Rice, Lee A. Jackson, A. F. Prescott,* and *Harold M. Seidel,* of counsel), for appellant.

*Lewis L. Stedman,* for respondent.

HILL, J.—The issue here is whether a mortgage was made to secure future advances and, if it was, whether United States tax liens take priority over the mortgage lien as to advances made subsequent to the filing of the United States tax liens. There are also questions raised as to the validity of the United States tax liens and the effectiveness of the notice given.

In February, 1955, Oscar Sundberg, Thor Sundberg, and Carl Sundberg (doing business as Oscar Sundberg and Sons, a partnership) entered into a contract with the Boeing Airplane Company to do certain painting for the sum of $341,569. The Sundbergs, as principals, entered into a performance bond with the American Surety Company, hereinafter referred to as the surety, by the terms of which, if the Sundbergs were unable to perform the contract, the surety was required to complete it or cause it to be done.

July 14, 1955, the Sundbergs being without sufficient funds to meet labor expenses, the surety advanced $9,000 to them, it being agreed that this sum would be secured by a mortgage.

July 19, 1955, the Sundbergs obtained another advance of $3,077.74; Thor Sundberg, on behalf of himself and the other partners, assigned to the surety all of their claims against Boeing; and each of the Sundbergs executed mortgages in favor of the surety on real property which they individually owned. Three of the mortgages were recorded

in King County on July 20, and the fourth in Island County on July 21. The mortgages, which were practically identical except for the mortgagor's name and the property described, stated that they were made in consideration of the $9,000 advanced July the 14th:

" . . . and in further consideration of the advance at this time of Three Thousand and Seventy-Seven and 74/100 ($3,077.74) Dollars, *and in consideration of further advances to be made,* and to secure the total sum now advanced amounting to Twelve Thousand and Seventy-Seven and 74/100 ($12,077.74) Dollars, according to the terms of promissory note bearing date of July 19, 1955, . . ." (Italics ours.)

July 21, the Sundbergs received a further advance of $10,863.37. A promissory note was given on that date to the surety in the sum of $22,941.11 (the sum of the advances made July 14, 19, and 21).

Additional advances were made to the Sundbergs on July 26, August 2 and 9; the amounts being $7,254.14, $3,314.58, and $2,208.45 respectively. A separate note was given for each of these advances. No other notes were given to the surety and no further advances were made direct to the Sundbergs. Each of these notes, together with the earlier note for $22,941.11, was signed by all of the partners. Each note provided for interest at five and one-half per cent until maturity and six per cent thereafter, and for a reasonable attorney's fee in the event of suit thereon. Each note also stated that it was "secured by mortgages on real estate and a chattel mortgage on personal property." (The record in this case is silent as to any chattel mortgage. The notes have no significance except as they bear on the question as to whether the mortgages were to secure future advances, as the action brought by the surety is clearly not an action on the notes.)

The surety made payments after August 9 (totalling $127,598.47), most of them directly to material men (the last payment for material being on April 5, 1956, from which date the interest allowed by the judgment is computed). This included also payments in the sum of $11,175.31 to

attorneys (made during 1957 and 1958[1]) and $130 for title reports made November 28, 1958, less than a month before these foreclosure proceedings were commenced. However, no specific item is questioned and the total amount which the surety had to pay to complete the contract is conceded to be $163,316.75.

The surety brought this action, asking for a judgment for the difference between the sum total of the payments made to complete the contract and the credits and payments it received on account of the contract (mostly from the Boeing Airplane Company), totalling $106,747.23.

The amount thus received by the surety must be credited on the first $106,747.23 advanced by the surety to complete the contract.[2] The judgment against the Sundbergs is for the portion remaining unpaid, $56,569.52. This amount was all advanced by the surety on or after December 6, 1955, as shown by the schedule of payments (exhibit No. 11), conceded to be correct.

Prior to December 6, 1955, the United States had assessed withholding taxes[3] against Oscar Sundberg and Sons in the sum of $22,626.20, payment of which was not made although notice and demand was made therefor. A notice of this tax lien was filed in the auditor's office of King County October 26, 1955, and in the auditor's office of Island County on February 17, 1959.

The United States claimed priority in the proceeds of the sale of the mortgaged property in King County, not only for this tax lien which was assessed and notice thereof filed in King County prior to the payment of any portion of

---

[1]This general statement is subject to the exception that $650 of the attorney's fees was paid December 13, 1955.

[2]*Bellingham Securities Syndicate v. Bellingham Coal Mines* (1942), 13 Wn. (2d) 370, 125 P. (2d) 668; *Whiting v. Rubinstein* (1941), 10 Wn. (2d) 5, 116 P. (2d) 305; *Diettrich Bros., Inc. v. Anderson* (1935), 183 Wash. 574, 48 P. (2d) 921; Restatement, Contracts, 743, § 394.

[3]"Withholding" taxes are imposed on wages pursuant to §§ 3401-3404 of the Internal Revenue Code of 1954. 26 U. S. C. A. (1958 ed.) 3401-3404.

the $56,569.52, for which the surety has judgment, but for other tax liens listed as follows:

| TAX | Outstanding amount of tax | Assessment date | Notice of tax lien filed in King County | Notice of tax lien filed in Island County |
|---|---|---|---|---|
| Withholding ... | $16,105.99 | 11-30-55 | 1- 4-56 | 2-17-59 |
| Withholding ... | 3,045.08 | 3- 8-56 | 3-21-56 | 2-17-59 |
| Unemployment[4] | 1,380.35 | 3-23-56 | 4-18-56 | 2-17-59 |
| Unemployment | 756.99 | 7-15-57 | | 2-17-59 |

The trial court, after entering judgment for the surety against the Sundbergs in the sum of $56,569.52, entered a decree foreclosing the mortgages and ordered that the property covered by the mortgages be sold and that the proceeds of the sale of the King County property be applied in the following order of priority: (1) The surety's judgment, together with interest and a $5,600 attorney fee; (2) a United States tax lien for $22,626.20, with interest, notice of which was filed in King County October 26, 1955; (3) a United States tax lien for $16,105.99, with interest, notice of which was filed in King County January 4, 1956; (4) B. F. Tilley's judgment for $4,649.88, with interest, entered in King County March 6, 1956; (5) the remaining tax liens of the United States for $3,045.08 and $1,380.35, with interest, notice of which was filed in King County March 21, 1956, and April 18, 1956, respectively; and a tax assessed July 15, 1957, in the amount of $756.99 with interest, no notice of which was filed in King County.

The United States appeals, so far as the priorities to the proceeds of the mortgaged property in King County are concerned, urging that the mortgages given by the Sundbergs to the surety were not effective to secure future advances as against the claim of its intervening liens and that, in any event, its lien for $22,626.20 had first priority on the proceeds of the sale.

We will, however, first consider the contentions made by the surety as to the validity of the tax lien and the effect of the notice filed. It was urged at the trial court level that since the tax lien notices, which were filed as

---

[4] "Unemployment" taxes are imposed by the Federal Unemployment Tax Act, §§ 3301-3308 of Internal Revenue Code of 1954. 26 U. S. C. A. (1958 ed.), §§ 3301-3308.

required by § 6323 of the Internal Revenue Code of 1954 (26 U. S. C. A. (1958 ed.), § 6323), used the name of Oscar Sundberg and Sons, they were not effective as notice of the government's liens on property belonging to the individual partners.

This issue was disposed of adversely to the surety by the trial court. It appears to raise the same issue in this court under the heading in its brief "Tax Lien Notices Were Invalid," and then argues an entirely different proposition, *i.e.*, that there was no lien on the individual property of the partners because the demand for payment of the taxes (required by §§ 6303 and 6321 of Internal Revenue Code of 1954) was not made on the individual partners.

The latter point seems never to have been brought to the attention of the trial court, and, hence, is not properly before this court. However, neither contention has any merit.

Section 6321 of the Internal Revenue Code of 1954 provides for a lien for the taxes under consideration:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Section 6322 of the Internal Revenue Code of 1954 provides for the period of the lien:

"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time."

■ The surety emphasized the first part of § 6321, *i.e.*, a refusal to pay after demand, as being a prerequisite to a lien, and urges that no demand was made upon the individual partners.

There is no question but that general partners are individually liable for the taxes due the United States from

the partnership. 26 U. S. C. A., § 701. *Underwood v. United States* (C. C. A. 5th, 1941), 118 F. (2d) 760.

A demand on the partnership is a demand upon all of the partners and is a sufficient compliance with the terms of both § 6321 and § 6303 of the Internal Revenue Code of 1954[5], for the purpose of making the taxes assessed a lien on the property of the individual partners.

██ Such liens are secret liens, but were good under Federal law even as against a subsequent *bona fide* purchaser or an encumbrancer in good faith (*United States v. Snyder* (1893), 149 U. S. 210, 37 L. Ed. 705, 13 S. Ct. 846) until in 1913 when Congress acted to protect a mortgagee, purchaser, or judgment creditor (and a pledgee was added in 1939) against such secret liens. See § 6323 of the Internal Revenue Code of 1954, 26 U. S. C. A., § 6323[6]. A notice of the United States liens, using the name of the partnership (Oscar Sundberg and Sons) was notice not only to anyone dealing with Oscar Sundberg, but also to those dealing with Carl and Thor Sundberg or their property, as mortgagee, pledgee, purchaser, or encumbrancer. *Richter's Loan Co. v. United States* (C. A. 5th, 1956), 235 F. (2d) 753;

---

[5]Section 6303 of the Internal Revenue Code of 1954, so far as material, reads:

"(a) General rule.—Where it is not otherwise provided by this title, the Secretary or his delegate shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address."

[6]"(a) Invalidity of lien without notice.—Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until *notice thereof has been filed* by the Secretary or his delegate—

"(1) Under state or territorial laws.—In the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice; . . ."

(It is conceded that the office of the county auditor is the proper place for the filing of such notices in this state; and that the filings of the notices in that office were on the dates indicated in the opinion.)

*United States v. Jane B. Corp.* (D. C. Mass., 1958), 167 F. Supp. 352. The rule is that the existence, effectiveness, and relative priority of Federal tax liens represent Federal questions. *United States v. Rasmuson* (C. A. 8th, 1958), 253 F. (2d) 944; *United States v. Acri* (1955), 348 U. S. 211, 99 L. Ed. 264, 75 S. Ct. 239; *United States v. Gilbert Associates, Inc.* (1953), 345 U. S. 361, 97 L. Ed. 1071, 73 S. Ct. 701; *United States v. Security Trust & Savings Bank* (1950), 340 U. S. 47, 95 L. Ed. 53, 71 S. Ct. 111.

While not relevant here, it would seem that such notices were probably adequate under Washington law, since notice sufficient to excite attention and put a person on guard, or to call for an inquiry is notice of everything to which such inquiry might lead. *First Nat. Bank of Kelso v. Hart* (1925), 137 Wash. 110, 118, 241 Pac. 675; *Tjosevig v. Butler* (1934), 180 Wash. 151, 38 P. (2d) 1022.

Passing from the question of the validity of the tax liens, and the sufficiency of notice thereof, we must, before we take up any consideration of priorities between the tax liens of the United States and the mortgages, first consider the primary issue raised by the United States: Were these actually mortgages to cover future advantages?

The trial court concluded that they were mortgages to secure future advances and, relying on *Home Sav. & Loan Ass'n v. Burton* (1899), 20 Wash. 688, 56 Pac. 940; *Eltopia Finance Co. v. Colley* (1923), 126 Wash. 554, 219 Pac. 24, and *Carey v. Herrick* (1928), 146 Wash. 283, 263 Pac. 190, held that the priority related back to the date of the mortgage since the payments made were obligatory rather than optional. *Elmendorf-Anthony Co. v. Dunn* (1941), 10 Wn. (2d) 29, 116 P. (2d) 253, 138 A. L. R. 558.

The United States urges that the rule of relation back should be limited, and in some states it is, to situations where the mortgage fixes a limit to the amount of the advances to be secured or states a definite purpose that is to be accomplished, such as the completion of a building or a contract. One authority says:

"If the limit be not defined in any way, it can be good only for the advances made at the time, and such others as

may afterward be made before any other incumbrances are made upon the property mortgaged. . . ." 1 Jones on Mortgages (8th ed.) 595, § 458.

In the present case, the amount of the advances already made at the time the mortgage was signed was $12,077.74, and while the mortgages stated that they were made "in consideration of further advances to be made," they did not say that they were to secure such advances, but only that they were:

" . . . to secure the payment of Twelve Thousand and Seventy-Seven and 74/100 ($12,077.74) Dollars so advanced according to the terms of promissory note bearing date of July 19, 1955.[7] . . ."

There was no specific limitation, no mention of the surety contract, or the painting contract, or anything else which would put a searcher of the record on notice that the mortgage might cover advances of over $160,000.

■■ However, we cannot agree with the United States that these mortgages were not made to secure the advances made and to be made by the surety in the completion of the contract. The mortgages were made on the same day (July 19, 1955) that the partnership assigned[8] all of their claims against Boeing to the surety. The four notes made by the Sundbergs, to which we have referred, were all subsequent to the mortgage and all recited that they were "secured by mortgages on real estate and a chattel mortgage on personal property"; and the mortgages being fore-closed were the only mortgages executed, insofar as the record discloses. As between the parties, these were mortgages to secure future advances, and we think that the statement in the mortgages—that they were made in consideration of advances thereafter to be made—is sufficient notice to

---

[7]There was no note bearing date of July 19th. See page 339 for description of the notes delivered by the Sundbergs to the surety.

[8]It was strenuously urged that such an assignment itself constituted a mortgage (under § 6323) in *United States v. R. F. Ball Constr. Co.* (1958), 355 U. S. 587, 2 L. Ed. (2d) 510, 78 S. Ct. 442, and a United States District Court and Circuit Court so held. The Supreme Court of the United States, with four judges dissenting, held that the assignment was not a mortgage.

subsequent encumbrancers that they were intended to secure future advances.

We come now to the consideration of whether the lien of the mortgages for future advances was prior or subordinate to the lien for United States taxes, the notices of which were filed after the mortgages but before certain future advances were made.

There can be no question but that under Washington law, if the mortgages were made to secure future advances, the trial court was eminently justified in its determination that all advances under the mortgages related back, so far as the lien was concerned, to the date of the mortgage. This position is supported by substantial authority as pointed out in 4 Pomeroy's Equity Jurisprudence (5th ed.), § 1199, p. 596:

"Finally, there are decisions by most able courts which give the prior mortgage to secure future advances an absolute preference; which maintain the mortgagee's supremacy, and preserve the lien of his mortgage against intervening subsequent encumbrances, even for advances made after receiving actual notice of such encumbrances. This conclusion is based upon the doctrines that the executory agreement of the mortgagee creates a full and perfect lien in equity, effectual against all persons who are charged with notice thereof, and that the record of the mortgage furnishes such a notice affecting all subsequent encumbrances."

However, "most able courts" must bow to the reality that the United States is not to be frustrated in the collection of revenue by the tax priority laws of fifty different states. The relative priority of the tax liens of the United States presents a Federal question to be determined by the Federal courts. *United States v. Security Trust & Sav. Bank, supra; United States v. Acri, supra; Illinois ex rel. Gordon v. Campbell* (1946), 329 U. S. 362, 371, 91 L. Ed. 348, 67 S. Ct. 340.

For a competing lien to take precedence over a Federal tax lien, it must not only be prior in point of time but it must also be perfected and choate.

It was in a case from this state[9] that the United States Supreme Court "launched the doctrine of the inchoate and general lien."[10] The competing lien must be definite (and not merely ascertainable in the future) in at least three respects as of the crucial time (the filing of the notice of the lien for United States taxes required by § 6323): identity of lienor, amount of the lien, and the property to which it attaches. *Illinois ex rel. Gordon v. Campbell, supra.*

As pointed out in *United States v. Ringler* (N. D. Ohio, 1958), 166 F. Supp. 544, the United States Supreme Court has not, as yet, passed upon the question involving the relative priority of a tax lien and a mortgage to secure future advances, where the tax lien was filed subsequent to the recording of a mortgage given to secure future advances but prior to advances for which a lien is claimed.

In the *Ringler* case, the mortgage was limited in amount to $20,000 and was to secure the payment of attorney's fees for services to be thereafter rendered. The mortgage was recorded June 18, 1953, and the notice of lien for United States taxes filed August 5, 1953. In an action to foreclose the tax lien (the taxes amounting to more than the value of the mortgaged property), the evidence was that the value of the legal services rendered the mortgagor, after the mortgage, was about $10,000 and that the value of the services rendered between June 18, 1953, and August 5, 1953, was $1,600. The court, after stating the rule (applied by the trial court in this case) that a mortgage to secure future advances which the mortgagee is obligated to make, takes priority over a subsequent lien recorded before the future advances were made, said (p. 548):

" . . . However, whenever a question involving the relative priority of United States tax liens and other liens arises, courts are required to apply the test of choateness to the competing liens. Applying that test here, it must be held that as to the indefinite future advances (in the form of legal services) which were to be made after August 5, 1953, the mortgage lien is subordinate to the tax lien of

[9]*Spokane County v. United States* (1929), 279 U. S. 80, 73 L. Ed. 621, 49 S. Ct. 321.

[10]63 Yale Law Journal 911 (1954).

the United States. The lien of the mortgage securing the value of services rendered between June 18, 1953 and August 5, 1953 stands on a different footing. As shown by the record, on August 5, 1953, legal services of the value of $1,600 had been rendered by the mortgagees in reliance upon the security of the mortgage. To that extent, therefore, the mortgage lien was not inchoate or imperfect. I am of the opinion that as to the amount of the mortgage lien securing such indebtedness the rule of first in time—first in right, applies. . . ."

Because of the lack of certainty as to whether future advances would be made and, if so, the amount thereof, the lien priority cases from this court relied upon by the trial court are inapplicable insofar as the liens of the United States for taxes are concerned.

Priority here is governed, so far as the United States tax liens are concerned, by the rationale of those Federal cases which hold that the lien of a prior mortgage must be subordinated to Federal tax liens where the mortgage lien is inchoate at the time the notice of the Federal tax lien is filed. *United States v. Bond* (C. A. 4th, 1960), 279 F. (2d) 837; *United States v. Christensen* (C. A. 9th, 1959), 269 F. (2d) 624; *United States v. Ringler, supra;* see also *Metropolitan Life Ins. Co. v. United States* (1959), 9 App. Div. (2d) 356, 194 N. Y. S. (2d) 168, applying the Federal law.

Thus the priorities, as they relate to the property in King County covered by the mortgages foreclosed in this action, would be:

(1) The United States tax lien, notice of which was filed for record on October 26, 1955, prior to the advancement of any portion of the last $56,-569.52 advanced by the surety................ $22,626.20

(2) The lien of the mortgage for that portion of the last $56,569.52 advanced by the surety, which was advanced between October 26, 1955, and January 4, 1956, when notice of the second of the United States tax liens was filed for record $25,376.35

(3) The United States tax lien, notice of which
was filed for record January 4, 1956............ 16,105.99

(4) The lien of the mortgage for that portion
of the advances made by the surety between
January 4, 1956 and March 21, 1956, when notice
of the third of the United States tax liens was
filed for record............................... 9,775.57

(5) The United States tax lien, notice of which
was filed for record March 21, 1956............ 3,045.08

(6) The United States tax lien, notice of which
was filed for record April 18, 1956............. 1,380.35

(7) The lien of the mortgage for the remainder
of the advances made by the surety after the
notice of the United States tax lien was filed for
record April 18, 1956......................... 21,417.60

(8) Lien of the B. F. Tilley judgment,[11] en-
tered March 6, 1956, together with interest and
costs ....................................... 4,649.88

(9) The unrecorded United States tax lien
assessed July 15, 1957, but not filed for record in
King County .............................. 756.99

Each of the government's liens would carry with it the
penalties and accrued interest; each segment of the mort-
gage lien would carry with it accrued interest, as would
the B. F. Tilley judgment.

The order of priority with reference to the proceeds of
the sale of the Island County property is quite different, as
all of the advances under the mortgage were made prior
to the filing of the Federal tax liens in that county, Febru-
ary 17, 1959. Hence, the lien of the mortgages in the sum of
$56,569.52 was a choate lien before notice of any United

---

[11]The lien of this judgment would, under the Federal rule, take
precedence over United States tax liens, of which notice was not
recorded, until after its entry; however, under our decisions it would
be subordinate to the lien of the mortgage. Our decisions control the
priorities between the mortgage and the judgment.

States tax lien was filed, and would, therefore, come first—followed by the United States tax liens. The B. F. Tilley judgment was not filed in that county. The trial court is affirmed as to order of priority, so far as the proceeds of the sale of the Island County property are concerned.

There is a further question, perhaps academic, as to the status of the $5,600 attorney fee, made a part of the judgment. The United States contends that an attorney's fee for the foreclosure of a prior mortgage, although provided for in the mortgage, cannot come ahead of its liens. We do not have to reach that question, as there is no provision in the mortgages for an attorney's fee.

As we have pointed out, almost $12,000 in attorney's fees was included in the cost of completing the contract and is not questioned. The additional $5,600 had nothing to do with the completion of the contract, but was for securing the present judgment against the Sundbergs and establishing the priority of the various liens against the mortgaged property. The four promissory notes each refer to an attorney's fee, but, as we have already pointed out, this action is not on the notes but to recover the difference between $163,316.75, expended in completing the contract, and $106,-747.23 received on account of the contract, i.e., $56,569.52. The basis, if any, for a contractual attorney's fee in this action is found in the application for the bond, which is not in the record.

The pre-trial order stated, and the trial court found, that Oscar Sundberg and Sons by their application for a bond agreed to pay, in the event of action, reasonable attorney's fees. Not being provided for in the mortgages, this attorney's fee became a charge on the mortgaged property solely by reason of the judgment of January 15, 1960, and is subsequent to all other liens so far as the mortgaged property is concerned, except possibly the tax lien for $756.99, of which, so far as the record discloses, no notice has yet been recorded in King County.

The trial court is directed to modify the judgment in the respects herein indicated.

The United States, having secured very substantial relief on this appeal, will recover its costs herein to be taxed.

FINLEY, C. J., WEAVER, ROSELLINI, and FOSTER, JJ., concur.

August 29, 1961. Petition for rehearing denied.

*Reported in 363 P. (2d) 138.