IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In re Matter of the General Receivership of: | No. 81686-1-I |
| EM PROPERTY HOLDINGS, LLC, a Washington Limited Liability Company, | ORDER DENYING MOTION FOR RECONSIDERATION, WITHDRAWING OPINION, AND SUBSTITUTING OPINION |
| COMMENCEMENT BANK, a Washington banking corporation, | |
| Appellant, | |
| v. | |
| EPIC SOLUTIONS, Inc., a Washington corporation, | |
| Respondent. | |

Respondent Epic Solutions, Inc., has moved for reconsideration of the opinion filed on June 21, 2021. A majority of the panel has considered the motion pursuant to RAP 12.4 and has determined that the motion should be denied. However, a majority of the panel has determined that the opinion should be withdrawn and a substitute opinion filed to correct the caption.

Now, therefore, it is hereby

ORDERED that the motion for reconsideration is denied; and it is further

ORDERED that the opinion filed on June 21, 2021, is withdrawn; and it is further

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re Matter of the General Receivership of:<br><br>EM PROPERTY HOLDINGS, LLC, a Washington Limited Liability Company,<br><br>COMMENCEMENT BANK, a Washington banking corporation,<br><br>           Appellant,<br><br>    v.<br><br>EPIC SOLUTIONS, Inc., a Washington corporation,<br><br>           Respondent. | No. 81686-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — Epic Solutions Inc. (Epic) provided consulting services to TTF Aerospace Inc. (TTF), EM Property Holdings, LLC (EMP), and the owners of these companies. The owners granted a deed of trust with a future advances clause secured by property (Property) to Epic as security for payment for the services. EMP later granted a deed of trust to Commencement Bank (Commencement), also secured by the Property.

EMP went into receivership and the receiver sold the Property. Epic moved for the trial court to approve its claim of $2,127,073.06, and to compel the receiver to distribute the proceeds of the sale of the Property. Epic asserted that its security interest, including with regard to all future advances, was superior to

Citations and pin cites are based on the Westlaw online version of the cited material.

those held by Commencement and another lienholder. The trial court granted Epic's motion. Commencement appeals, saying the trial court erred in ruling that the priority of Epic's security interest, including all future advances, related back to its original deed of trust. We disagree and affirm.

## I. BACKGROUND

Timothy Morgan, Bradford Wilson, and Philip Fields (owners) are the shareholders of TTF and the members of EMP. Epic provided consulting services to TTF, EMP, and the owners under a contract (Service Agreement). In recognition of the debt owed under the Service Agreement, the owners issued a promissory note (Promissory Note) for $344,762.50 with eight percent interest secured by a deed of trust (Original Deed of Trust) on the Property, both dated April 19, 2017. The Original Deed of Trust states that it secures a sum of $344,762.50 "and also such further sums as may be advanced or loaned by Beneficiary" to the owners and any of their successors or assigns. Epic recorded the Original Deed of Trust on April 21, 2017. EMP owned the Property.

The owners amended the Promissory Note on September 30, 2017, to increase the principal to $546,737.50, and granted an amended deed of trust on October 5, which they recorded on October 6, 2017.[1]

In October 2017, Elite Aviation Interior Inc. (Elite) loaned $1.5 million to TTF. EMP granted a deed of trust on the Property to Elite that Elite recorded on

---

[1] The amended deed of trust does not include a future advances clause but states, "Except as provided herein, all terms and conditions of the Deed of Trust, as heretofore changed, remain unchanged and in full force and effect."

October 6, 2017, just a few hours after Epic recorded the amended deed of trust.[2]

The owners issued a second amended promissory note to Epic in November 2017 to reflect an increase in the amount owed to $731,580.99. They also granted a second amended deed of trust reflecting the change on November 8 and recorded it on November 13, 2017.

On November 9, 2017, EMP granted a deed of trust in Commencement's favor in the amount of $1.5 million, secured by the Property, in recognition of a loan from Commencement to EMP. On the same date, Commencement and Elite entered a subordination agreement that allowed Commencement to take priority over Elite for up to $1.5 million. Commencement recorded its deed of trust on November 27, 2017.

In February 2019, the owners issued a third amended promissory note to Epic reflecting an increase in the amount owed to $1,515,000.

In August 2019, the owners acknowledged that TTF owed Epic $1,788,406.64 for services rendered.

EMP later moved into receivership and the trial court authorized the receiver to sell the Property. Epic, claiming that it was owed $2,127,073.06, moved for the trial court to approve its claim on the Property's sale proceeds and to compel the receiver to disburse to it the sale proceeds. In its motion, Epic asserted its security interest, including with regard to all future advances, was

---

[2] The owners granted Epic's deeds of trust and EMP granted those to Elite and Commencement. The parties do not dispute the validity of any deed of trust; they dispute only their priority with regard to future advances.

superior to those asserted by Elite and Commencement. Commencement opposed Epic's motion.

After oral argument, the trial court granted Epic's motion to approve its claim and compel the receiver to disburse the sale proceeds. It reasoned that

> Epic's April 19, 2017 recorded Deed of Trust preceded the subsequent encumbrances of Commencement Bank and Elite. There is no dispute that Epic Solutions has a priority secured claim. In addition, Epic's April 19, 2017 recorded Deed of Trust included a future advances clause that provided Epic with a continued security interest on the on-going debt owed by the owners, TTF, and EMP. Pursuant to the holding in Kim v. Lee, 145 Wn.2d 79, 31 P.3d 665 (2001) and RCW 60.04.226, the priority of the future advances relates back to the April 19, 2017 Deed of Trust. As such, Epic is entitled to payment of its secured claim in the amount of $2,127,073.06 from the proceeds received from selling the real property.

## II. ANALYSIS

Commencement says the trial court erred by failing to consider whether future advances made by Epic caused it material prejudice, and that the sums advanced by Epic did not constitute future advances. It also contends that the trial court erred in determining that RCW 60.04.226 applies to these circumstances. We disagree.

The parties dispute whether the trial court ruled on summary judgment. It does not appear the trial court did so. But since the question before us is one of lien priority, we review de novo regardless. Kim, 145 Wn.2d at 85–86.

A. Failure to Analyze Prejudice under Kim v. Lee

Commencement says the trial court erred in ruling that under Kim, the priority of the future advances under Epic's Original Deed of Trust relates back to

its April 19, 2017 recording date. It contends that under <u>Kim</u>, the court should have analyzed whether Epic's future advances prejudiced junior lienholders such as itself. Commencement asserts that if the trial court had analyzed prejudice, it would have concluded that the future advances issued after Commencement's mortgage do not relate back to the Original Deed of Trust's April 19, 2017 recording date. But <u>Kim</u> does not require analysis of prejudice to junior lienholders if the deed of trust includes a future advances provision.

In <u>Kim</u>, our Supreme Court adopted principles from the RESTATEMENT (THIRD) OF PROP.: MORTGAGES § 7.3 (1997) related to mortgage priority, including, importantly here, subsection (b):

> If a senior mortgage or the obligation it secures is modified by the parties, the mortgage as modified retains priority as against junior interests in the real estate, except to the extent that the modification is materially prejudicial to the holders of such interests *and is not within the scope of a reservation of right to modify as provided in subsection (c).*

145 Wn.2d at 89 (emphasis added). The court continued by saying that,

> Under the *Restatement,* a modification of a mortgage will ordinarily cause it to lose priority to junior interests to the extent that the modification is materially prejudicial to those interests. *Id.* § 7.3. Not all modifications will materially prejudice junior interests. For example, mortgagees commonly consent to an extension of the mortgage maturity date or to a rescheduling or "stretching out" of installment payments. *Id.* § 7.3 *cmt. c.* Absent an increase in the principal amount or the interest rate of the mortgage, such modifications normally do not jeopardize the mortgagee's priority as against intervening interests. *Id.*

<u>Id.</u> at 89–90. Commencement points to this language from <u>Kim</u> to support its claim that the trial court erred by failing to analyze material prejudice. But this

passage does not purport to provide an exhaustive list of circumstances of when modifications to a mortgage will not lead to lost priority.

Kim does not quote RESTATEMENT § 7.3(c). But it does adopt RESTATEMENT § 7.3(b), which cites to and is qualified by subsection (c); by adopting subsection (b), the court impliedly adopted subsection (c). And under subsection (c), "If the mortgagor and mortgagee reserve the right in a mortgage to modify the mortgage or the obligation it secures, the mortgage as modified retains priority even if the modification is materially prejudicial to the holders of junior interests in the real estate, except as provided in Subsection (d)."[3]

---

[3] Subsection (d) is a provision functionally similar to Washington's "stop notice" provision for construction lenders and lienholders, codified at RCW 60.04.221 and addressed below. It states that,

> If a mortgage contains a reservation of the right to modify the mortgage or the obligation as described in Subsection (c), the mortgagor may issue a notice to the mortgagee terminating that right. Upon receipt of the notice by the mortgagee, the right to modify with retention of priority under Subsection (c) becomes ineffective against persons taking any subsequent interests in the mortgaged real estate, and any subsequent modifications are governed by Subsection (b). Upon receipt of the notice, the mortgagee must provide the mortgagor with a certificate in recordable form stating that the notice has been received.

Subsection (d) does not apply here.

But relatedly, Commencement says that holding that a court need not analyze material prejudice in the case of a future advances clause would "pose[] significant risks to the lending environment in Washington," and would "severely limit the market for loans secured by a junior security interest." Yet by allowing a mortgagor to issue a notice to terminate any future advances, the stop notice provision in RESTATEMENT § 7.3(d)—which subsection (c) cites to and is qualified by—acts as a trade-off that protects junior lienholders. See 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE, REAL ESTATE § 17.16 (2d ed.) (characterizing RCW 60.04.221 as a "trade-off" with RCW 60.04.226, which provides that a recorded deed of trust has priority over all later recorded deeds of trust no matter when the loan secured by the original is disbursed). RESTATEMENT § 7.3 cmt. e explains how a stop notice protects borrowers and junior lienholders:

> Third parties will often be unwilling to advance credit when the amount secured by the senior mortgage is uncertain due to its potential for modification. Because modification provisions can operate in much the same fashion as future advances provisions, the mortgagor, by analogy to

6

<u>Kim</u> also cites with approval RESTATEMENT § 7.3 cmt. c, which states, "Even when material prejudice exists . . . no loss of priority will occur if the mortgage contains a clause reserving the right to modify, the modification is within the scope of the clause, and the clause's operation has not been terminated by notice from the mortgagor."  145 Wn.2d at 89.

Thus, under <u>Kim</u>, since the Original Deed of Trust secured "such further sums as may be advanced or loaned by Beneficiary" to TTF, EMP, and the owners, the trial court need not have analyzed whether the future advances prejudiced junior lienholders such as Commencement.[4]

### B.  New Obligations as Future Advances

Commencement says that the trial court erred by ruling that the sums owed under the Service Agreement constituted future advances on Epic's secured claims.  Specifically, it asserts that because there was not a maximum amount of funds that could be advanced under the Service Agreement, and because the Original Deed of Trust did not secure repayments under the agreement, the amounts owed under the agreement did not constitute future advances.  We disagree as to both claims.

---

§ 2.3(b), has the right to issue a "cut-off notice" to the mortgagee terminating the priority-retention effect of the mortgage modification provision.  Upon receipt of the notice, the modification provision will no longer be effective to preserve the priority of future modifications against those taking subsequent interests in the mortgaged real estate. . . .  The purpose of § 7.3(d) is to encourage subsequent lenders to rely on the "cut-off notice" and therefore be willing to advance credit to the mortgagor.

[4] Commencement does not dispute whether the modification is within the scope of the future advances clause or claim that the mortgagors terminated the clause's operation.

7

Commencement says future advances provisions must set a maximum amount that a lender can extend to a borrower. Commencement cites a number of cases in which courts dealt with future advances clauses that stated a maximum amount of funds that could be advanced. See, e.g., Pac. Cont'l Bank v. Soundview 90, LLC, 167 Wn. App. 373, 376, 273 P.3d 1009 (2012) (lender committed to loan up to $10.3 million); Nat'l Bank of Wash. v. Equity Inv'rs, 81 Wn.2d 886, 890, 506 P.2d 20 (1973) (lender granted $1.75 million construction loan). But it cites none in which the court said a future advances clause *must* state such a maximum. And in American Surety Company of New York v. Sundberg, the court held that a mortgage need not list the amount to be extended as a future advance in order to retain priority. 58 Wn.2d 337, 345–46, 363 P.2d 99 (1961). Further, RESTATEMENT § 7.3 cmt. b states that:

> Where the original mortgage clearly states that it secures future advances and specifies no maximum monetary amount, the intervening lienor is not materially prejudiced. Since the intervenor takes its lien on notice that future advances are possible, it cannot validly claim injury based on the fact that the replacement mortgage exceeds the pre-release balance of its predecessor.

The Original Deed of Trust need not have set a maximum amount that Epic could lend to the borrowers.

Also, Commencement cites no law to support its claim that debts owed under the Service Agreement cannot constitute future advances because the Original Deed of Trust does not reference it. We need not consider arguments unsupported by legal authority. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (holding a court need not consider

8

arguments unsupported by legal authority). But we note that the mortgage in Sundberg did not mention the underlying contracts that formed the basis of the sums advanced as future advances, yet the court still held a tax lien was junior to those advances, even though the sums were extended after the tax lien. 58 Wn.2d at 345–46 ("There was no specific limitation, no mention of the surety contract, or the painting contract, or anything else which would put a searcher of the record on notice that the mortgage might cover advances.").

## C. RCW 60.04.226

Commencement says that the trial court erred in determining that RCW 60.04.226 applies here, because its legislative intent suggests it should apply only to construction loans. We disagree. The statute applies to any deed of trust and thus it applies here.

RCW 60.04.226 provides that:

> Except as otherwise provided in RCW 60.04.061 or 60.04.221, any mortgage or deed of trust shall be prior to all liens, mortgages, deeds of trust, and other encumbrances which have not been recorded prior to the recording of the mortgage or deed of trust to the extent of all sums secured by the mortgage or deed of trust regardless of when the same are disbursed or whether the disbursements are obligatory.

We review de novo the meaning of a statute. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). To interpret a statute, we begin by analyzing its plain meaning. Columbia Riverkeeper v. Port of Vancouver USA, 188 Wn.2d 421, 435, 395 P.3d 1031 (2017). To do so,

> we consider the text of the provision, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole. If the meaning of

the statute is plain on its face, then we must give effect to that meaning as an expression of legislative intent.

Id. (citing Campbell & Gwinn, 146 Wn.2d at 10–11) (citation omitted).

RCW 60.04.226 states that "any" recorded deed of trust is prior to "all" later recorded deeds of trust. This unambiguous language suggests the statute applies to all deeds of trust, and not just construction loans. The statute's title ("Financial encumbrances—Priorities") does not suggest any limitation to construction loans. And one of the statutes linked in its text—RCW 60.04.221— specifically applies to construction loans, and does not use the broad language seen in RCW 60.04.226. Granted, the statute is in Chapter 60.04, which is titled "Mechanics' and Materialmen's Liens"; but under RCW 1.08.017(3), "[s]ection captions, part headings, subheadings, tables of contents, and indexes appearing in legislative bills shall not be considered any part of the law." And while, as recognized by Pacific Continental Bank v. Soundview 90, LLC, the legislature enacted RCW 60.04.226 after encountering difficulties to construction loans imposed by the obligatory versus optional distinction embodied in the Washington Supreme Court's ruling in National Bank of Washington, Pacific Continental Bank does not limit RCW 60.04.226's application to construction loans. 167 Wn. App. 373, 380–81, 273 P.3d 1009 (2012). The contextual factors surrounding RCW 60.04.226—including its actual text—suggest that it applies to all deeds of trust. Thus, we conclude that RCW 60.04.226 applies to the Original Deed of Trust.[5]

---

[5] Commencement says, assuming we agree that RCW 60.04.226 applies only to construction loans, then we must decide whether the sums advanced by Epic were optional or obligatory under the Original Deed of Trust, citing Elmendorf-Anthony Co. v.

D. Attorney Fees, Costs, and Interest

Epic says we should award it appellate attorney fees and costs either under the Promissory Note or in equity. It also says it is entitled to eight percent interest on the unpaid balance owing to it. We decline to award Epic attorney fees and costs or interest.

The Service Agreement and Promissory Note include attorney fees and costs provisions. But Commencement is not a party to either of these contracts, so we decline to grant an award of fees and costs on those grounds.

Epic also says it is entitled to attorney fees and costs in equity, since a third party to the notes is subjecting it to litigation. A court may award attorney fees and costs in equity where acts by a third party subject it to litigation. See City of Seattle v. McCready, 131 Wn.2d 266, 274, 931 P.2d 156 (1997) (citing Wells v. Aetna Ins. Co., 60 Wn.2d 880, 882–83, 376 P.2d 644 (1962)). Epic cites Wells, in which our Supreme Court held that "when the natural and proximate consequences of a wrongful act by defendant involve plaintiff in litigation with others, there may, as a general rule, be a recovery of damages for the reasonable expenses incurred in the litigation, including compensation for attorney's fees." Id. at 882. But Epic does not allege any wrongdoing by Commencement, and it does not appear Commencement committed any

Dunn, 10 Wn.2d 29, 116 P.2d 253 (1941). There, the court "adopted the rule that future advances take priority over intervening liens only if the advances are 'obligatory,' not if they are 'optional' with the lender." 18 STOEBUCK & WEAVER, supra, § 17.16. The legislature later enacted RCW 60.04.226 to abrogate the obligatory versus optional distinction. 18 STOEBUCK & WEAVER, supra, § 17.16; see Pac. Cont'l Bank, 167 Wn. App. at 380–81. Because RCW 60.04.226 applies to all deeds of trust, we need not reach this issue.

wrongful act. This doctrine does not provide any grounds for attorney fees and costs here.

Finally, Epic says it is entitled to eight percent interest on the unpaid balance owing to it, since the Promissory Note provides for eight percent interest. But Epic does not explain who owes the interest. It does not appear that Commencement owes interest since it is not a party to the Promissory Note. It does not appear that we can hold that an obligor on the note owes interest because the obligors are not parties to this appeal. And Epic cites no law in support of its request for interest.

We affirm. And we deny Epic's request for attorney fees, costs, and interest.[6]

_____
Chun, J.

WE CONCUR:

_____          _____
                                 Appelwick, J.

---

[6] Commencement says for the first time in its reply brief that Epic does not explain how $612,073.06 accrued on the debt owed to it in the time between the third amended promissory note and the filing of its claim, so we should reduce Epic's claim by that amount. Because Commencement waited until its reply brief to raise this issue, Epic had no opportunity to respond to these assertions. Nor does it appear that Commencement raised this issue to the trial court. For these reasons, we decline to consider this issue. See White v. Kent Med. Ctr., Inc., P.S., 61 Wn. App. 163, 168, 810 P.2d 4 (1991) (recognizing that courts decline to consider issues raised for the first time in reply materials because the respondent has no opportunity to respond); RAP 2.5(a).

ORDERED that a substitute opinion shall be filed.

FOR THE COURT:

_____
Chun, J.
Judge