[No. 2852–3. Division Three. July 17, 1979.]

JOE CORDELL, *Respondent,* v. RAYMOND M. REGAN, ET AL, *Appellants.*

740

*Peter G. Young,* for appellants.

*Gay Cordell* and *Scott & Cordell,* for respondent.

GREEN, C.J.—The defendants Regan appeal from the trial court's foreclosure of a materialman's lien claimed by Joe Cordell, the plaintiff–contractor, and from a judgment against the Federal Land Bank.

Three questions are presented: (1) Did the trial court err when it admitted parol evidence concerning the contract price? (2) Are the unpaid obligations of the contractor, incurred in performing the contract, properly claimed by him in a lien foreclosure suit? and (3) Did the court err when it awarded the contractor the balance of defendant's construction loan proceeds held by the Bank?

In the spring of 1977, the parties orally agreed that the contractor would construct a house for the defendants on their property. In order to obtain a loan to finance the construction, the defendants submitted three written documents to the Federal Land Bank on April 25, 1977. A document entitled "Construction Agreement" was the only one signed by all the parties. It provided a time for completion of the contract and a method of disbursing the loan proceeds. In addition, it referred to a building specifications form, another of the written documents submitted to the Bank. That form set forth the types of materials to be used in construction. The third document was a cost breakdown sheet which was signed by the contractor and listed the price for the various components of the house. According to this document, the cost of the components plus the contractor's overhead profit totaled $46,327. No provision was made for the cost of a septic tank, although the specifications called for one to be installed.

The contractor began to work on the project in May 1977. During the course of that summer, he periodically submitted itemized bills to the defendants for the cost of the labor and materials, plus a 10 percent profit margin for himself. The defendants did not dispute these bills and paid each of them from the loan proceeds held by the Bank. On approximately November 1, the defendants refused to pay the contractor's October bill for $8,011.75. At this point the parties became involved in a dispute over the amount of the contract price.

As a result of this dispute, the contractor stopped work, filed a mechanics' lien on the property and instituted this action for foreclosure.[1] On conflicting evidence, the trial court held for the contractor and entered judgment foreclosing the lien, and awarded the contractor the balance of the loan proceeds retained by the Bank.

First, the defendants contend that the three documents submitted to the Bank constituted an integrated contract which could not be varied by parol evidence. The trial court concluded that the parties had not intended to be bound by the amounts contained in the written cost breakdown, but, instead, had agreed that the contract price would be cost plus 10 percent. The court based its decision on the testimony of the contractor and on the testimony of Jerrel Newberry, a neighbor and friend of the defendants who had also dealt with the contractor.

The contractor stated that his agreement with the defendants was to construct the house for a price equal to his cost of construction plus a 10 percent profit. In support of this assertion, he pointed out that the defendant husband actively involved himself in the construction process in an attempt to hold down the cost of labor and materials. Defendant independently secured certain materials which he could get at a better price than the contractor. At times,

---

[1]The Federal Land Bank was also named as a defendant. It answered, acknowledged that it held funds for the construction of the residence, but did not defend at trial. The Bank is not a party to this appeal.

the defendants' orchard employees worked on the house. The cost of such materials and labor was not included as part of the contractor's cost of construction. The contractor characterized the figures contained on the cost breakdown sheet as estimates prepared only for the purpose of the defendants obtaining a loan from the Bank. To the contrary, the defendant husband testified that he agreed to a price of cost plus 10 percent with a ceiling of $46,327, the figure contained in the cost breakdown. He explained that he supplied some of the labor and materials because he hoped that the price could be kept well below the ceiling so that the extra funds could be used to construct a shed.

The second witness, Mr. Newberry, was introduced to the contractor by the defendant husband about the time the contractor started work on the defendants' home. He testified that the defendant husband told him that the contractor was performing the work under a cost plus 10 percent arrangement. He did not recall a ceiling on the price. Mr. Newberry subsequently entered into an oral agreement with the contractor to build a house for him at the contractor's cost plus 10 percent; however, the agreement was never implemented.

Based on the foregoing evidence, the court found that the cost breakdown sheet was not incorporated into the construction agreement and, therefore, was not a part of the contract. In his oral opinion, the trial judge explained that

> taking into . . . consideration the fact that it [the cost breakdown sheet] is a document required by the loaning agency and is not a document which has to do directly with the contract of the parties, and taking into further consideration that it isn't even signed by both parties, the court simply takes notice that the top figure is stated and to that extent it is of some help to the court in arriving at his final conclusion. But of particular importance to this court, as it is in most cases, is what actions did the parties take during the carrying out of the contract that indicates their thinking one way or another as to what type of contract it is.

■ It is defendants' position on appeal that the court erred as a matter of law in finding that the cost breakdown sheet was not a part of the contract. They rely on the general rule that where several instruments are made as part of one transaction, the instruments will be read and construed together. *Levinson v. Linderman*, 51 Wn.2d 855, 322 P.2d 863 (1958); *Paine–Gallucci, Inc. v. Anderson*, 41 Wn.2d 46, 246 P.2d 1095 (1952). This argument presupposes that the parties intended that the three documents which the Bank required for completion of the loan would also constitute the complete written expression of their agreement. In determining whether the parties so intended, the trial court properly heard extrinsic evidence. *Peter Pan Seafoods, Inc. v. Olympic Foundry Co.*, 17 Wn. App. 761, 565 P.2d 819 (1977). There is ample evidence to support the court's finding that the cost breakdown was not intended to be a part of the parties' contract.[2]

Furthermore, we note that the documents themselves treat the figures on the cost breakdown sheet as merely estimates for the Bank and the borrower to use in deciding whether the loan request was reasonable. Specifically, the document entitled "Construction Agreement" states:

> Attached, for your information, is a *guide* for disbursement of loan proceeds which will assist you in determining if your construction program is in line with your requests for disbursements.

(Italics ours.) Hence, assuming the three documents should be read together, a fixed contract price is not clearly set forth in the writings, and parol evidence is properly admissible for the purpose of determining the significance of the figure contained in the cost breakdown. *Peter Pan Seafoods, Inc. v. Olympic Foundry Co., supra*. We find no error in the admission of the parol testimony.

---

[2]The defendants cite *Turner v. Wexler*, 14 Wn. App. 143, 538 P.2d 877 (1975). That decision is distinguishable from the instant case. In *Turner*, the court held that the question of whether three agreements constitute one contract or more is a question of law. Here, the question is whether the cost breakdown sheet was ever a part of the contract.

Second, the defendants assert that the foreclosure judgment is improper to the extent that it includes costs of materials, incurred but unpaid. by the contractor. RCW 60.04.010 provides:

> Every person . . . furnishing material . . . to be used in the construction . . . of any . . . building . . . has a lien upon the same for the . . . material furnished, . . .

The question is whether the legislature intended that a contractor first pay its suppliers for the materials it uses in performing its contract before it has a right to claim a lien for those materials.

██ ██ Statutory terms are generally given their ordinary and usual meaning. *Webster's Third New International Dictionary* (1969) gives the following definition of "furnish":

> 1 a : to provide or supply with what is needed, useful, or desirable: equip . . .

This definition suggests that the material is "furnished" when it is delivered. Consequently, delivery, rather than payment, provides the basis for the claim of lien. To hold otherwise would require a general contractor to pay his suppliers before he has access to the statutory remedy and would severely limit the availability of that remedy. Many contractors do not have sufficient resources to finance their construction contracts without depending upon the extension of credit by their suppliers. Hence, we hold that payment to a supplier is not a pre–condition to the contractor's foreclosure of a lien for materials.

Moreover, in the instant case the suppliers of materials have not filed separate liens against the defendants' property; the contractor has filed the only lien for these expenses. RCW 60.04.110 allows the contractor

> to recover upon the claim filed by him only such amount as may be due him according to the terms of his contract, after deducting all claims of other parties for labor performed, . . . materials furnished, and equipment supplied; . . .

If the suppliers had filed their own liens, their claims would be deducted from the amount due the contractor. That did not happen here, and we find nothing in the statutes to prevent a foreclosure for the total amount of the contractor's lien.[3] The suppliers are protected by the requirement imposed by the trial court that the checks be made payable jointly to the contractor and the unpaid suppliers.

Third, the defendants assign error to the portion of the trial court's judgment which awarded to the contractor the balance of their loan proceeds held by the Federal Land Bank. They contend that the lien operates first against the real property; then, if a deficiency exists, the lienholder may collect the balance by execution against the personal assets of the party liable for the underlying debt. We find no error.

█ The defendants' analysis does not take into account RCW 60.04.210. That statute provides:

> Any lender providing interim or construction financing where there is not a payment bond of at least fifty percent of the amount of construction financing shall observe the following procedures:
>
> . . .
>
> (2) Any potential lien claimant who has not received a payment within twenty days after the date required by his contract, . . . may within twenty days thereafter file a notice . . . of the sums due . . . for which a potential lien claimant may claim a lien under chapter 60.04 RCW.
>
> (3) The notice must be filed in writing with the lender . . . with a copy furnished to the owner and appropriate general contractor. The notice shall state in substance and effect that such person . . . has furnished labor, materials and supplies, or supplied equipment for which right of lien is given by this chapter, with the name of the general contractor, agent or person ordering the

---

[3]*Chavelle v. Island Gun Club,* 77 Wash. 304, 308, 137 P. 511 (1914), stands only for the narrow proposition that a subcontractor is entitled to a lien in "the amount due him according to the terms of his contract." The question of whether a contractor's unpaid obligations to its suppliers may be included in its lien was not presented. *Smyth v. Lance & Peters, Inc.,* 52 Wash. 560, 100 P. 995 (1909); and *Willett v. Davis,* 30 Wn.2d 622, 193 P.2d 321 (1948), may be distinguished on the same basis.

same, a common or street address of the real property being improved or developed, or if there be none the legal description of said real property, description of the labor, or material furnished, or equipment leased, . . . the name, business address and telephone number of said lien claimant which notice shall be given by mailing the same by registered or certified mail, return receipt requested.

(4) After the receipt of such notice, the lender shall withhold from the next and subsequent draws such percentage thereof as is equal to that percentage of completion . . . which is attributable to the potential lien claimant . . .

(5) Sums so withheld shall not be disbursed by the lender except by the written agreement.

potential lien claimant, owner and general contractor *. . . or the order of a court of competent jurisdiction.*

(Italics ours.) There is nothing in this statute preventing a lienholder from foreclosing his lien upon the real property and at the same time securing an order directing a lender to disburse loan proceeds.

In this case, the Bank received a notice of claim of lien, which notice substantially complies with the notice requirements of RCW 60.04.210(3). According to the findings of the trial court, the defendants refused payment of the contractor's October statement on approximately November 1, 1977. Notice of lien was mailed to the Bank and to the defendants on November 28, 1977. The statute calls for notice to the lending institution within 40 days after the date of payment required by the contract. Since the contract here apparently did not set a fixed date for payment, we hold the time period runs from the date the defendants refused payment. Thus, the contractor here gave notice within the statutory period and was entitled to an order directing disbursement of the proceeds to him. The judgment constitutes such an order.

Finally, we remand to the trial court for a determination

and award of a reasonable attorney's fee to the contractor on appeal as provided in RCW 60.04.130.[4]
Affirmed.

MUNSON and McINTURFF, JJ., concur.

[4]RCW 60.04.130 states: "The court may allow to the prevailing party in the action, whether plaintiff or defendant, as part of the costs of the action, the moneys paid for filing or recording the claim, and a reasonable attorney's fee in the superior court, court of appeals, and supreme court."