[No. 13534–1–I.   Division One.   April 23, 1986.]

TOWN CONCRETE PIPE OF WASHINGTON, INC., *Plaintiff*,
v. ART REDFORD, *Respondent*, WALTER E.
HELLER & COMPANY, *Appellant*.

*Ryan, Swanson, Hendel & Cleveland, Jerry Kindinger,* and *Thao Tiedt,* for appellant.

*John J. Van Buskirk,* for respondent.

RINGOLD, A.C.J.—Appellant, Walter E. Heller and Company, appeals the trial court's judgment that respondent, Art Redford d/b/a Redford Construction Company, is entitled to $20,000 damages as unjust enrichment.

This case presents three issues for consideration. Can a construction lender defeat a contractor's claim under RCW 60.04.210 by refusing to make further disbursements and foreclosing on the security? Did enactment of RCW 60.04-.210 abolish unjust enrichment as a remedy available to contractors against lenders? Did the court err in concluding that the doctrine of unjust enrichment was applicable to the facts of this case? We conclude that damages for unjust enrichment are not available here and reverse.

In August 1979, Heller, as lender, entered into a written agreement with the borrower, Rainier Pacific Industries, to loan $850,000 to finance Rainier Pacific's development of lots for a residential subdivision called Killarney Glen. The loan funds were to be advanced upon certain conditions as set forth in the loan agreement. A note and deed of trust were executed by Rainier Pacific to secure the transaction.

The major advance of $294,000 was used by Rainier Pacific to purchase the land for development at Killarney Glen. In total, $385,537 was advanced by Heller to Rainier Pacific through January 31, 1980. Thereafter, Rainier Pacific defaulted on its loan obligations and no further funds were advanced by Heller.

In October 1980, 9 months after the last loan advance, Rainier Pacific entered into a contract with Redford to perform construction work at Killarney Glen. Though Redford knew that Rainier Pacific was having difficulties restructuring its loan with Heller, Redford commenced work in February 1981 at the urging of Rainier Pacific. Rainier Pacific promised Redford would get payment. Heller simply indicated that the loan was in the process of being restructured. Redford was also aware that another contractor had a lien against the development and that this lien was causing problems for Rainier Pacific in obtaining its loan proceeds. On March 16, 1981, Redford met with Rainier Pacific to discuss this problem. Rainier Pacific continued in default.

In early April 1981, Redford requested a set–aside letter from Heller. Without having received this letter, Redford began laying pipe and completed a major part of the work between April 28 and May 22, 1981. On or about May 21, 1981, Redford was informed that Rainier Pacific remained in default, that the loan was not restructured, and the set–aside letter would not be forthcoming.

Redford stopped work on May 22, 1981. A stop notice was filed on May 27, 1981, and two amended stop notices dated June 23 and July 6, 1981, were subsequently filed. These notices advised Heller that Redford had not been paid.

Heller commenced nonjudicial foreclosure proceedings on its deed of trust against the Killarney Glen property in fall 1982. On February 25, 1983, Heller obtained title by trustee's sale.

Redford sued Rainier Pacific for breach of contract and

Heller for unjust enrichment.[1] At trial, Redford obtained a stipulated judgment against Rainier Pacific in the amount of $103,332.10. The court also entered judgment against Heller in the amount of $20,000 based upon Redford's claim of unjust enrichment. Heller appealed and Redford cross–appealed.

### CLAIM UNDER RCW 60.04.210[2]

The stop notice provision, RCW 60.04.210, was devised to provide additional security to those who furnish labor or materials in the erection or improvement of buildings. Under the statute, a potential claimant may give notice to a

---

[1]Suit was initially instituted on January 13, 1982, by Town Concrete Pipe of Washington which supplied Redford with pipe. Before trial, Town Concrete obtained a summary judgment against Redford and did not pursue further legal action.

[2]RCW 60.04.210 provides in part:

"Any lender providing interim or construction financing where there is not a payment bond of at least fifty percent of the amount of construction financing shall observe the following procedures:

". . .

"(2) Any potential lien claimant who has not received a payment within five days after the date required by his contract, employee benefit plan agreement, or purchase order may within twenty days thereafter file a notice as provided herein of the sums due and to become due, for which a potential lien claimant may claim a lien under chapter 60.04 RCW.

"(3) The notice must be filed in writing with the lender at the office administering the interim or construction financing, with a copy furnished to the owner and appropriate general contractor . . .

"(4) After the receipt of such notice, the lender shall withhold from the next and subsequent draws such percentage thereof as . . . is attributable to the potential lien claimant . . .

"(5) Sums so withheld shall not be disbursed by the lender except by the written agreement of the potential lien claimant, owner and general contractor in such form as may be prescribed by the lender, or the order of a court of competent jurisdiction.

"(6) In the event a lender fails to abide by the provisions of subsections (4) or (5) of this section, then the mortgage, deed of trust or other encumbrance securing the lender will be subordinated to the lien of the potential lien claimant to the extent of the interim or construction financing wrongfully disbursed, but in no event in an amount greater than the sums ultimately determined to be due the potential lien claimant by a court of competent jurisdiction, or more than the sum stated in the notice, whichever is less."

construction lender that payment by the borrower is more than 5 days overdue. RCW 60.04.210(2). The lender then has three options:

First, if the lender chooses to allow further draws upon the construction loan fund, he "shall withhold" funds to satisfy the stop notice from these "next and subsequent draws." Second, if the lender chooses to continue draws without withholding funds for the stop notice, he suffers the "penalty" of Section 2(6), and his mortgage is subordinated to the subsequent mechanics' lien of the stop notice claimant "to the extent of the interim or construction financing wrongfully disbursed, but in no event in an amount greater than the sums ultimately determined to be due the potential lien claimant by a court of competent jurisdiction, or more than the sum stated in the notice, whichever is less." Third, the lender may avoid the effect of the stop notice altogether by making no further loan advances and foreclosing his mortgage. In this last situation, the PLC's only recourse is to his mechanics' lien which will have no enhanced priority by reason of the stop notice.

(Footnotes omitted.) Note, *Mechanics' Lien: The "Stop Notice" Comes to Washington,* 49 Wash. L. Rev. 685, 695–96 (1974).

Redford contends that since the third option is not specifically provided by the statute, it may not be used. RCW 60.04.210(4). This argument fails for a number of reasons.

■■ First, nothing in the statute itself prohibits the lender from exercising his right to foreclose on a deed of trust when the borrower is in default. So, this court should not imply such a prohibition. *Cf. Cordell v. Regan,* 23 Wn. App. 739, 746, 598 P.2d 416 (1979). Second, lien statutes are in derogation of the common law and should be strictly construed. *Burns v. Miller,* 42 Wn. App. 801, 803, 714 P.2d 1190 (1986); *Shope Enters. v. Kent Sch. Dist.,* 41 Wn. App. 128, 133, 702 P.2d 499 (1985). The provisions of the stop notice statute should not be expanded beyond its explicit language. Last, the Legislature's intent to provide an additional protection for a potential lien claimant is not violated by strict interpretation of the statute. As a general

rule, it may be undesirable for a lender to foreclose before a project is finished. Note, *supra* at 696. The reason is "[m]ore often than not, the market value of a partially constructed building will be substantially less than the total cost of the labor and material which has already been incorporated into its construction." *J.G. Plumbing Serv., Inc. v. Coastal Mortgage Co.,* 329 So. 2d 393, 395 (Fla. Dist. Ct. App. 1976).

We conclude that the stop notice provision does not preclude a lender from foreclosing on security when the borrower is in default.

### AVAILABILITY OF EQUITABLE RELIEF

Heller argues that the stop notice provision was enacted in reaction to Washington cases that put a lender's lien priority in jeopardy if the lender used any discretion when advancing funds. *See National Bank v. Equity Investors,* 81 Wn.2d 886, 506 P.2d 20 (1973); Note, *supra* at 689–90. The stop notice and mechanics' lien were designed to adequately safeguard the rights of contractors. Heller contends that if a contractor can also maintain a claim in equity, lenders will, in effect, become guarantors of contracts to which the lenders are not parties and over which lenders have no control. Heller maintains that this will have a chilling effect on the banking and lending industry. Heller notes that California has a similar stop notice provision and its courts have held that enactment of the stop notice abolished all actions based upon equitable liens or unjust enrichment.

█ Equitable relief is available if there is no adequate remedy at law. *Orwick v. Seattle,* 103 Wn.2d 249, 252, 692 P.2d 793 (1984). While equity will not suffer a wrong without a remedy, equity follows law and cannot provide a remedy where legislation expressly denies it. *Stephanus v. Anderson,* 26 Wn. App. 326, 334, 613 P.2d 533 (1980). There is no indication that the Legislature intended to deny equitable relief when providing the statutory remedies of mechanics' lien and stop notice. The California statute

that Heller cites for support is to the contrary.

The California Civil Code § 3156 created stop notices for private works of improvement. Section 3264 of the Code states that:

The rights of all persons furnishing labor, services, equipment, or materials for any work of improvement, with respect to any fund for payment of construction costs, are governed exclusively by Chapters 3 (*commencing with Section 3156*) and 4 (commencing with Section 3179) of this title, and *no person may assert any legal or equitable right* with respect to such fund, other than a right created by direct written contract between such person and the person holding the fund, except pursuant to the provisions of such chapters.

(Italics ours.) Cal. Civ. Code § 3264 (West 1974).

No comparable restriction exists in the Washington stop notice legislation and this court will not imply one. Damages for unjust enrichment may, therefore, be obtained when appropriate regardless of the existence of the remedy provided in RCW 60.04.210.

### Unjust Enrichment

██ A party must make restitution when he has been unjustly enriched at the expense of another. *Chemical Bank v. WPPSS*, 102 Wn.2d 874, 909, 691 P.2d 524 (1984), *cert. denied*, 471 U.S. 1065, 1075 (1985); Restatement of Restitution § 1 (1937). The mere fact of benefit alone is not enough. Liability only attaches where the circumstances of the benefit would make it unjust to retain it. *Chandler v. Washington Toll Bridge Auth.*, 17 Wn.2d 591, 601, 137 P.2d 97 (1943); Restatement of Restitution § 1(c) (1937). The question before this court is whether the retention by Heller of the improvements made by Redford would be unjust without Heller making restitution.

In *Irwin Concrete, Inc. v. Sun Coast Properties, Inc.*, 33 Wn. App. 190, 653 P.2d 1331 (1982), the court considered whether five lien claimants could recover from a lender on the theory of unjust enrichment. The court held that they could stating that:

The trial court found that the claimants completed the water system at the urging and with consent of Continental, and that Continental knew about and silently acquiesced in the work when it was foreclosing its deed of trust. Substantial evidence also supports these findings. The record discloses, *inter alia,* that early in 1974, Continental told Chaves that he had to continue his work in order to receive loan funds. In February 1974, Walt Smith of Active Construction Co. worked on the 172 acres. Before Smith started to work, David Ballaine of Continental told him that loan funds from Continental to pay for Smith's work were secure. Late in 1974, Continental knew that Chaves was still certifying work by subcontractors. Continental knew that Irwin, Fox and Davis were working on the water system because Chaves certified their completed work. We conclude that under these circumstances it would be unjust for Continental to receive the benefit of the claimants' work without paying.

*Irwin Concrete,* at 194–95.

*Irwin Concrete* emphasizes that to succeed in a claim of unjust enrichment, there must be facts sufficient to support a conclusion that restitution is necessary to avoid injustice. The facts necessary to support this conclusion will necessarily vary depending upon the circumstances of each case.

If a lender forecloses on a completed project the courts are more inclined to invoke the doctrine of unjust enrichment. In *Twin City Constr. Co. v. ITT Indus. Credit Co.,* 358 N.W.2d 716 (Minn. Ct. App. 1984), after completion of the entire project, the lender refused to make final payment under a construction contract claiming that the borrower was in default. The court allowed an unpaid contractor to collect from the lender on the basis of unjust enrichment. *Twin City,* at 719; *see also Gee v. Eberle,* 279 Pa. Super. 101, 420 A.2d 1050 (1980). The underlying rationale is that in obtaining title to the completed property, the lender obtained the entire security for which he bargained. To enable him to retain this benefit without payment would, therefore, be unjust. *Morgen–Oswood & Assocs. v. Continental Mortgage Investors,* 323 So. 2d 684 (Fla. Dist. Ct. App. 1975).

■ Where the project is incomplete at the time of foreclosure, as in the case sub judice, more must be shown to support the conclusion that the foreclosing lender is being unjustly enriched. If the lender has already disbursed the funds earmarked for the work done by the unpaid contractor, the courts generally do not find unjust enrichment. While the lender may have been enriched, it is not unjust under the circumstances since he has already paid for the benefits through the disbursal of the earmarked funds. *Jordan v. Lone Pines, Ltd.,* 41 Colo. App. 152, 580 P.2d 1273, 1274–75 (1978); *Myers–Macomber Eng'rs v. M.L.W. Constr. Corp.,* 271 Pa. Super. 484, 414 A.2d 357, 360–61 (1979). A lender does not have a duty to see that loan funds are properly disbursed to contractors. *Reid v. Saul,* 146 Ga. App. 264, 246 S.E.2d 121, 122 (1978).

In *J.G. Plumbing Serv., Inc. v. Coastal Mortgage Co.,* 329 So. 2d 393 (Fla. Dist. Ct. App. 1976), the court considered whether a construction mortgage lender on an unfinished project was liable to unpaid subcontractors to the extent of undisbursed loan funds for failure to promptly notify them of the general contractor's default. *J.G. Plumbing,* at 394. The court distinguished this case from those in which the construction was completed.

> If all of the funds called for under the loan agreement have not been disbursed by the time construction has been completed, the construction lender then has more security than it bargained for. Should a default then occur, the mortgage lender will be in the position of being able to foreclose upon (and perhaps buy in) a completed building even though it has not yet disbursed all of the construction loan money. Under these circumstances, the Fourth District Court of Appeal recently held that a contractor who had completed the construction in accordance with his construction agreement was entitled to an equitable lien against the undisbursed balance of construction loan funds under the construction loan agreement. In essence, that was a case in which relief was granted in order to avoid an unjust enrichment.
>
> We do not believe that this principle can be extended to a situation where the default occurs before the con-

struction contemplated by the loan agreement has been completed. Under these circumstances, the construction lender is left with the remedy of foreclosing upon a partially completed building. More often than not, the market value of a partially constructed building will be substantially less than the total cost of the labor and material which has already been incorporated into its construction. Under these circumstances, it cannot be said that the mortgagee has been unjustly enriched. To adopt the rule urged by appellant would place upon construction lenders the unwarranted duty of affirmatively keeping all of the subcontractors and materialmen advised of the status of the mortgage and might even discourage a mortgage lender from working with its mortgagor so as to enable him to correct his default and to complete the job.

(Citation omitted.) *J.G. Plumbing,* at 395. The reasoning expressed in *J.G. Plumbing* comports well with the rule that the mere enhancement in value alone does not invoke the doctrine of unjust enrichment, *W.T. Watts, Inc. v. Sherrer,* 89 Wn.2d 245, 254–55, 571 P.2d 203 (1977), and we find it persuasive.

■ The trial court found:

That the testimony relative to the value of the work performed is limited; however, from this testimony the court finds that the reasonable value of the work performed by Art Redford d/b/a Redford Construction Company which has enhanced Killarney Glen was in the amount of $20,000.00 when Walter E. Heller & Company took possession of the property at sheriff's foreclosure sale on Feb. 25, 1983.

It also stated in finding of fact 23 that Heller received the benefit of Redford's work and "it would be unjust for it to keep without paying therefor." The conclusion that retention without restitution would be unjust is a conclusion of law, not a finding of fact. *Lloyd v. Ridgefield Lumber Ass'n,* 38 Wn.2d 723, 735, 231 P.2d 613 (1951); *Park v. Ross Edwards, Inc.,* 41 Wn. App. 833, 837, 706 P.2d 1097 (1985). Findings of fact that are conclusions of law are treated as such and will stand only if there are other findings of fact sufficient to support them. *George E. Miller Lumber Co. v.*

*Holden,* 45 Wn.2d 237, 245, 273 P.2d 786 (1954).

The trial court's findings indicate that Redford contracted with Rainier Pacific to perform certain construction tasks. At the urging of the borrower, Redford began construction with the knowledge that Rainier Pacific was having problems restructuring its loan with Heller. Though Rainier Pacific promised to pay Redford, Heller only indicated that the loan was in the process of being restructured. Redford was also aware that another contractor had a lien against the development that was causing problems for Rainier Pacific in obtaining further advances. Redford sought to secure payment by requesting a set–aside letter from Heller. Heller never issued the letter, but Redford continued with the construction work. Redford was informed of Rainier Pacific's default and subsequently filed a stop notice.

Nothing in the findings of fact supports the conclusion that Heller was enriched or that the enrichment was unjust. *See Indianapolis Raceway Park, Inc. v. Curtiss,* 179 Ind. App. 557, 386 N.E.2d 724, 727 (1979). Since there is no record of any oral decision being rendered in this case, this court cannot resort to the court's oral decision to determine the court's reason for concluding Heller was unjustly enriched. *Structurals Northwest, Ltd. v. Fifth & Park Place, Inc.,* 33 Wn. App. 710, 715, 658 P.2d 679 (1983). Accordingly, we reverse.

COLEMAN and WEBSTER, JJ., concur.