[No. 29806-2-I. Division One. February 16, 1993.]

EMERALD CITY ELECTRIC & LIGHTING, INC., *Plaintiff*, v.
JENSEN ELECTRIC, INC., ET AL, *Defendants*,
CONTINENTAL, INC., *Respondent*,
SNORTELAND CONSTRUCTION,
ET AL, *Appellants*.

*Frank R. Siderius, Solie M. Ringold,* and *Siderius, Lonergan & Crowley,* for appellants.

*Gary M. Fallon* and *Hillis Clark Martin & Peterson,* for respondent.

AGID, J. — Snorteland Construction and Hugh McNiven Company appeal from a judgment granting Continental, Inc.'s motion for summary judgment, dismissing their counterclaims, and granting an award of attorney fees and costs to Continental, Inc. We affirm the trial court.

On October 30, 1989, Continental, Inc. (Continental) made a construction loan for $6,980,000 to Ambaum Athletic Club Associates (Ambaum) to finance the construction of a 164-unit apartment complex at South 177th Place and Ambaum Boulevard in King County, Washington (the project). The loan was secured by a deed of trust recorded October 31, 1989, against the real property on which the project is located and by a filed security agreement covering all personal property associated with the project. Continental made approximately 15 disbursements on its loan to Ambaum between October 1989 and January 11, 1991. The entire principal balance of the loan became due and owing pursuant to the terms of the loan on January 31, 1991.[1] On February 15, 1991, Continental sent a letter to Ambaum demanding immediate payment of all amounts owing under the loan. On April 15, 1991, after it became apparent that Ambaum would be unable to pay the accrued interest on the loan or to fulfill other requirements for extending the loan term, Continental initiated a nonjudicial foreclosure action against the property. On June 21, 1991, Continental recorded its notice of trustee's sale against the property. On October 4, 1991, Continental was the successful bidder at the trustee's sale in its foreclosure action.

Earlier in the course of construction of the apartment complex, Ambaum had arranged with General Electric Company (General Electric) to purchase refrigerators, washing machines, dryers and dishwashers for the entire 164-unit project. In December 1990, as a condition of General Electric's delivery of the appliances to the project, Continental and Ambaum entered into an agreement to set aside $221,959.56 of the loan funds to

---

[1]The principal balance as of that date was $5,581,237.29.

cover the cost of the appliances.[2] On December 10, 1990, General Electric filed a UCC-1 financing statement to protect its interest in the appliances as unattached personal property. On June 21, 1991, after Ambaum had defaulted on its loan, General Electric filed a complaint for replevin or moneys due on appliances delivered for the last 44 units in March 1991 without notice to Continental but at the apparent direction of Ambaum. General Electric sought an order directing payment of funds directly to it from the set-aside account that Ambaum and Continental had established in December 1990. In response to the litigation, Continental released $59,605.20 of the set-aside funds to General Electric on July 8, 1991.

Snorteland Construction (Snorteland) and Hugh McNiven Company (McNiven) are subcontractors of Blake Property Corporation, the general contractor on the project. Snorteland and McNiven first began supplying labor and/or materials for the project in July and August 1990 respectively. Between February 21, 1991, and April 24, 1991, Snorteland and McNiven issued "stop notices" to Continental as potential lien claimants pursuant to former RCW 60.04.210. Snorte-

---

[2]The text of the agreement between Ambaum and Continental is entitled "Set Aside of Fund for General Electric" and reads as follows:

> The above referenced bank hereby certifies that the sum of $221,959.56 has been set aside to cover Purchase Order No. 8925-03A to General Electric for the appliances for [Ambaum Athletic Club Apartments].

> The bank hereby certifies that the above funds will not be released until shipment of the appliances has been received and that the funds shall not be used for any other purpose.

Snorteland and McNiven imply that the set-aside agreement is in some way a prohibited assignment, suggesting that this can be inferred from the lack of case law in Washington and California explaining the operation of such an agreement. However, the matter-of-fact reference to a set-aside letter in *Town Concrete Pipe of Wash., Inc. v. Redford*, 43 Wn. App. 493, 495, 717 P.2d 1384 (1986) suggests that such agreements are regarded by Washington courts as standard practice. The California cases cited by the appellants are inapposite. They rely on former section 1190.1(h) of the California Code of Civil Procedure, providing for the posting of a bond by a potential lien claimant; no comparable provision exists in the Washington statute. Each of the cases is also factually distinguishable.

land and McNiven also filed third party claims against Continental in the instant lien foreclosure action brought by Emerald City Electric & Lighting, Inc. Following cross motions for summary judgment on the effect of Continental's payment to General Electric from the set-aside funds, the trial court granted summary judgment in favor of Continental and ruled that Continental was entitled to its reasonable attorney fees and costs pursuant to former RCW 60.04.130.

# I
## SUMMARY JUDGMENT

In reviewing an order granting summary judgment, this court engages in the same inquiry as the trial court and considers all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Meaney v. Dodd*, 111 Wn.2d 174, 177, 759 P.2d 455 (1988). Summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Meaney*, 111 Wn.2d at 177-78. Because there is no dispute as to the underlying facts, this case turns on whether, as a matter of law, the release of funds by Continental to General Electric was a "draw" within the meaning of former RCW 60.04.200(5). Snorteland and McNiven argue that the release of funds to General Electric by Continental was a draw. If this is correct, Continental was required to withhold a portion of those funds to satisfy their liens and its deed of trust would be subordinated to their liens in the amount of that disbursement.

Former RCW 60.04.210(2)[3] permits a potential lien claimant who has not received a payment within 5 days after the date required by his contract to file a "stop notice". This is a notice of the sums due and to become due for which the

---

[3]RCW 60.04.200, RCW 60.04.210, and RCW 60.04.220 were repealed effective April 1, 1992, and replaced by RCW 60.04.011, RCW 60.04.221, and RCW 60.04-.226 respectively. Laws of 1991, ch. 281, § 31.

potential lien claimant may claim a lien under RCW 60.04. RCW 60.04.210(4) provides that

> [a]fter the receipt of such notice, [any lender providing interim or construction financing] shall withhold from the next and subsequent draws such percentage thereof as is equal to that percentage of completion . . . which is attributable to the potential lien claimant as of the date of the certification of job progress for the draw in question less contracted retainage.

Former RCW 60.04.200(5) defines a "draw" as "periodic disbursements of interim or construction financing by a lender." Former RCW 60.04.200(2) defines " '[i]nterim or construction financing' " as

> that portion of money secured by mortgage, deed of trust, or other encumbrance *to finance construction of improvements on, or development of, real property*, but does not include:
> (a) Funds to acquire real property;
> (b) Funds to pay interest, insurance premiums, lease deposits, taxes, assessments, or prior encumbrances;
> (c) Funds to pay loan, commitment, title, legal, closing, recording or appraisal fees;
> (d) Funds to pay other customary fees; which pursuant to agreement with the owner or borrower are to be paid by the lender from time to time;
> (e) Funds to acquire personal property for which the potential lien claimant may not claim a lien pursuant to chapter 60.04 RCW.

(Italics ours.) The statute broadly defines a "draw" as any payment made to improve real property, but exempts from that definition payment for personal property for which the potential lien claimant could not have claimed a lien under RCW 60.04.[4]

---

[4]Implicit in the language of former RCW 60.04.200(2)(e), "for which the potential lien claimant may not claim a lien pursuant to [RCW 60.04]" is the assumption that the lien is a valid one. Appellants assert that General Electric filed a lien on the appliances under RCW 60.04. The lien, if one was filed, is not part of the record on appeal, and General Electric did not seek to foreclose on a lien. In any event, it would be invalid because it was intended to secure an interest in personal property and therefore not relevant to the issue in the trial court and on appeal.

 Thus, the question becomes whether the appliances at issue were items of personal property or fixtures. Items sold to a property owner will not give rise to a claim under the lien statute unless they become fixtures. *Westinghouse Elec. Supply Co. v. Hawthorne*, 21 Wn.2d 74, 78, 150 P.2d 55 (1944). For personal property to become a fixture, it must meet *each* of the following requirements:

> (1) Actual annexation to the realty, or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the party making the annexation to make a permanent accession to the freehold.

*Department of Rev. v. Boeing Co.*, 85 Wn.2d 663, 667, 538 P.2d 505 (1975) (quoting *Lipsett Steel Prods., Inc. v. King Cy.*, 67 Wn.2d 650, 652, 409 P.2d 475 (1965)). Appliances not attached to the building in which they are located are not fixtures. *McLeary v. Department of Game*, 91 Wn.2d 647, 653, 591 P.2d 778 (1979) (a refrigeration unit removed from a hatchery was not a fixture because, even though it sat on bolts, it was not actually bolted down). The appliances here were stock goods that needed only to be plugged in and were not designed specially for or permanently affixed to the buildings in question.[5] Because it is undisputed that they were simply delivered and uncrated by General Electric, *i.e.*, no labor was expended by General Electric to affix the appliances to the realty, the appliances remained items of personal property and did not become fixtures.[6] The payment to General Electric was for personal property and, by definition, was not a draw under the statute. Continental was therefore not required to withhold any portion of its payment to General Electric on behalf of Snorteland and McNiven.[7] The trial

---

[5]Appellants' argument that it was sufficient to show that the parties *intended* to affix the undercounter dishwashers to the units is incorrect. That is only one of the three requirements for converting personal property to fixtures. *Boeing*, 85 Wn.2d at 667.

[6]Although the invoices included a $7 charge for "labor" which could be subject to a lien under RCW 60.04, there was no showing that labor was expended in installing the appliances or that the labor charge was actually paid.

[7]Because we have concluded that the payment here falls within the personal property exception to former RCW 60.04.200(2) set forth in subsection (e), we do

court properly granted summary judgment in favor of Continental.

## II
### ATTORNEY FEES

■ Snorteland and McNiven also argue that the trial court erred in relying on former RCW 60.04.130 to award attorney fees and costs to Continental. Former RCW 60.04-.130 provides in pertinent part:

> In every case in which different liens are claimed against the same property, the court, in the judgment, must declare the rank of such lien or class of liens . . .
> . . . .
> . . . The court may allow to the prevailing party in the action, whether plaintiff or defendant, as part of the costs of the action, the moneys paid for filing or recording the claim, and a reasonable attorney's fee in the superior court, court of appeals, and supreme court.

Mechanics' and materialmen's liens, such as those of Snorteland and McNiven, are normally junior to a deed of trust when, as here, they arise after the deed of trust was filed. Former RCW 60.04.050. Snorteland and McNiven sought to establish that, based on the operation of former RCW 60.04-.210, their liens had priority over Continental's deed of trust in the amount they contend should have been withheld. The court was thus called upon to determine the priority of liens. Under the terms of former RCW 60.04.130, the prevailing party in an action to establish lien priority is entitled to an award of attorney fees and costs, whatever the basis for that party's interest in the property may be. Thus, as the prevailing party, Continental was entitled to an award of attorney fees and costs below and, in an amount to be determined by a commissioner pursuant to RAP 18.1(f), on appeal.

Affirmed.

WEBSTER, C.J., and BAKER, J., concur.

---

not reach the question of whether the payment here also falls within the scope of RCW 60.04.200(2)(b), which excepts payments for prior encumbrances.