[No. 65929-4-I.   Division One.   March 26, 2012.]

PACIFIC CONTINENTAL BANK, *Respondent*, v. SOUNDVIEW 90, LLC, ET AL., *Respondents*, VILLAGE FRAMERS CORPORATION, *Appellant*.

Terry R. Marston II (of Marston Elison PLLC), for appellant.

James S. Irby and Diana K. Carey (of Karr Tuttle Campbell); and Maria A.I. Seip, for respondents.

¶1 LAU, J. — RCW 60.04.221's stop notice procedure protects potential lien claimants when a lender provides

interim or construction financing. Under this provision, a potential claimant may give notice to the lender, who then "shall withhold from the next and subsequent draws the amount claimed to be due as stated in the notice." RCW 60.04.221(5). If the lender fails to comply, the encumbrance securing the lender is "subordinated to the lien of the potential lien claimant to the extent of the interim or construction financing wrongfully disbursed . . . ." RCW 60.04.221(7). Pacific Continental Bank (Bank) provided construction financing to Soundview 90 LLC to purchase and construct an apartment complex. Village Framers Corp. (VFC) recorded a $385,465.48 mechanics' lien on the property for the unpaid contract balance. Because the Bank's creation of a $386,000.00 reserve violates the stop notice provision's express requirement to withhold that amount from the next and subsequent draws, the Bank's entire deed of trust is subordinated to VFC's lien claim under RCW 60.04.221(7). We reverse summary judgment granted in the receiver's favor and remand for proceedings consistent with this opinion.

## FACTS

¶2 The material facts are undisputed.[1] In October 2007, the Bank committed to loan Soundview up to $10,300,000 to finance the purchase and construction of the Soundview Apartments. The Bank secured its loan with a construction deed of trust on the land and its improvements, recorded on October 29, 2007.

¶3 VFC subsequently entered into a subcontract with Soundview to perform wood framing for the project in exchange for $430,372.00. VFC subcontracted the framing

---

[1] Both parties' clerk's papers (CP) citations are erroneous. Rather than citing to the CP numbering system, the parties erroneously cite to King County Superior Court's subnumbers. *See* RAP 10.4(f) ("A reference to the record should designate the page and part of the record. Exhibits should be referred to by number. The clerk's papers should be abbreviated as 'CP'; exhibits should be abbreviated as 'Ex'; and the report of proceedings should be abbreviated as 'RP.' ").

work to Gordon Harding Construction. VFC began work on the Soundview Apartments on June 23, 2008, and completed its work on June 26, 2009. On February 12, 2009, Soundview paid VFC $73,000.00. VFC recorded a $385,465.48 mechanic's lien on Soundview's property on August 5, 2009 for the unpaid contract balance. On August 13, VFC served the Bank with a stop notice for that amount according to RCW 60.04.221.[2]

¶4 The stop notice substantially complied with the sample form provided for in RCW 60.04.221(4). This notice informed the Bank about its statutory obligation to withhold from the next and future project construction draws the amount of $385,465.48 or have its security interest in the property subordinated to VFC's mechanics' lien:

*NOTICE TO REAL PROPERTY LENDER*
(Authorized by RCW 60.04.221)

. . . .

The amount owing to the undersigned according to contract or purchase order for labor, supplies, or equipment (as above mentioned) is the sum of three hundred eighty-five thousand four hundred sixty-five and 48/100 dollars ($385,465.48). Said sums became due and owing as of June 26, 2009.

You are hereby required to withhold from any future draws on existing construction financing which has been made on the subject property (to the extent there remain undisbursed funds) the sum of three hundred eighty-five thousand four hundred sixty-five and 48/100 dollars ($385,465.48).

*IMPORTANT*
FAILURE TO COMPLY WITH THE REQUIREMENTS OF THIS NOTICE MAY SUBJECT THE LENDER TO A WHOLE

---

[2] Below, the receiver "reserved argument on the factual question of whether . . . a timely stop notice from VFC would have been required long before the date it was actually issued." But on review of the summary judgment, the receiver acknowledges that "all factual claims by VFC are presumed accurate." Resp't's Br. at 5 nn.18, 19.

OR PARTIAL COMPROMISE OF ANY PRIORITY LIEN IN-
TEREST IT MAY HAVE PURSUANT TO RCW 60.04.226.

(Formatting and boldface omitted.)

¶5 On receipt of the stop notice, "the Bank withheld
$386,000.00 from loan funds available for disbursement to
or for the benefit of the Borrower[,] although the Bank did
continue to advance other unrestricted loan proceeds for
payment of non-contested invoices." According to the Bank,
it issued an alert message through its loan accounting
system directing its officers to hold back $386,000.00 for
VFC's lien. The Bank continued to fund Soundview's other
unrestricted draw requests until the total of all loan ad-
vances reached $9,208,226.13 of the total loan amount of
$10,300,000.00.[3]

¶6 On November 1, 2009, the Bank declared Soundview
in default on the past due loan. In December 2009, the Bank
filed a complaint for monies due, judicial foreclosure of its
deed of trust, and appointment of a receiver. The receiver
moved to approve the sale of the Soundview property for
$6.5 million, create a $400,000.00 escrow fund from the
proceeds, and distribute the remainder to the Bank. The
Bank had a deficiency of unpaid principal and interest
totaling $3,074,328.91 after applying the distributed por-
tion of the sale proceeds.

¶7 On July 29, 2010, the receiver moved for summary
judgment on behalf of the Bank, seeking an order declaring
the validity and priority of the Bank's security interest in
the $400,000.00 escrow fund and authorizing the distribu-
tion of those funds to the Bank. On August 17, 2010, VFC
filed its combined opposition brief and cross motion for
summary judgment, seeking a declaration that its mechan-

---

[3] In essence, the Bank created a reserve equal to the amount of VFC's claim
rather than withhold the amount claimed from Soundview's monthly draw.
According to VFC, the Bank's reserve would "theoretically prevent Soundview
from tak[ing] a draw for the *last* $385,465.48 of the total $10,300,000 loan
commitment, but would not—and did not—result in any reduction in the amount
of its monthly draws." Appellant's Br. at 8.

ics' lien had priority over the Bank's deed of trust. VFC later withdrew its cross motion, claiming that "it was more beneficial to allow the court to focus on the single issue of properly interpreting RCW 60.04.221, regarding 'Stop Payment Notices' to real property lenders." The trial court granted the receiver's summary judgment motion, found that the Bank's security interest took priority over VFC's mechanics' lien, extinguished VFC's interest in the escrowed funds, and ordered distribution of the $400,000.00 to the Bank.

## ANALYSIS

### Standard of Review

¶8 When reviewing a summary judgment order, we engage in the same inquiry as the trial court, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Jones*, 146 Wn.2d at 300-01. Statutory interpretation is a question of law, which we review de novo. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 243 P.3d 1283 (2010).

### History of RCW 60.04.221's Stop Notice Provision

¶9 Future advances clauses in mortgages or deeds of trust allow for collateral to serve as security for obligations the mortgagor may incur in the future. Future advances mortgages are common in real estate development. In a construction loan mortgage, the developer (mortgagor) typically "agrees that the mortgage will secure a loan to be paid out in installments, called 'progress payments' or 'draws' as construction progresses." 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 17.16, at 299 (2d ed. 2004).

¶10 Washington has long recognized future advances mortgages and historically took the position that between the holder of a future advances mortgage and third parties with competing lien or mortgage claims on the same land, any progress payments made before the competing lien is filed take priority. 18 STOEBUCK & WEAVER, *supra*, at 300.[4] But Washington law varied on whether draws made after an intervening lien took the same priority as earlier advances. Early Washington cases held that the mortgage lender took priority in progress payments made after a competing lien was filed. *See Eltopia Fin. Co. v. Colley*, 126 Wn. 554, 219 P. 24 (1923); *Heal v. Evans Creek Coal & Coke Co.*, 71 Wn. 225, 128 P. 211 (1912). But in *Elmendorf-Anthony Co. v. Dunn*, 10 Wn.2d 29, 39-40, 116 P.2d 253 (1941), "Washington adopted the rule that future advances take priority over intervening liens only if the advances are 'obligatory,' not if they are 'optional' with the lender." 18 STOEBUCK & WEAVER, *supra*, at 300.

¶11 In *National Bank of Washington v. Equity Investors*, 81 Wn.2d 886, 506 P.2d 20 (1973), the court held that the bank's construction mortgage, which contained several protective clauses allowing the bank to withhold progress payments for various reasons, made every progress payment "optional" and thus lower in priority than intervening liens. The decision created unintended difficulty for drafters of construction loan mortgages, prompting the legislature to intervene. 18 STOEBUCK & WEAVER, *supra*, at 301. Responding to *Equity Investors*, the legislature adopted RCW 60.04.220 in 1973 (reenacted with minor changes in 1991 as RCW 60.04.226). 18 STOEBUCK & WEAVER, *supra*, at 301. It abrogates the obligatory/optional distinction and

---

[4] In Washington, a mechanics' or materialmen's lien will take priority over "any lien, mortgage, deed of trust, or other encumbrance which *attached to the land after* or was *unrecorded at the time of commencement of labor or professional services or first delivery of materials or equipment* by the lien claimant." RCW 60.04.061 (emphasis added). Thus, encumbrances that attached and were recorded before commencement of labor or professional services or first delivery of materials or equipment by a mechanics' lien claimant take priority over the mechanics' lien.

provides that a recorded mortgage or deed of trust takes priority over subsequently recorded liens "to the extent of all sums secured by the mortgage or deed of trust regardless of when the same are disbursed or whether the disbursements are obligatory." RCW 60.04.226.[5]

■ ■ ¶12 The statutory trade-off to RCW 60.04.226 is the so called "stop notice" created by RCW 60.04.221. *See* 18 STOEBUCK & WEAVER, *supra,* at 299-301. "Subject to some exceptions, an unpaid potential lien claimant is empowered to give a lender who provides 'construction financing' a notice of his claim, whereupon the lender is required to hold back from progress payments enough to cover the claim." 18 STOEBUCK & WEAVER, *supra,* at 301; *see also* RCW 60.04.221.

¶13 Under RCW 60.04.221's linked subsections, withholding the construction draw forces the borrower to seek resolution of the payment dispute. Failing that, if the lender can obtain from the borrower or general contractor a lien release bond for the benefit of the claimant in the amount of a stop notice claim received, the lender need not withhold any funds for that particular claim.

> (5) *After the receipt of the notice, the lender shall withhold from the next and subsequent draws the amount claimed to be due as stated in the notice.* Alternatively, the lender may obtain from the prime contractor or borrower a *payment bond for the benefit of the potential lien claimant in an amount sufficient to cover the amount stated in the potential lien claimant's notice.* The lender shall be obligated to withhold amounts only to the extent that sufficient interim or construction financing funds remain undisbursed as of the date the lender receives the notice.

> (6) *Sums so withheld shall not be disbursed by the lender, except by the written agreement of the potential lien claimant,*

---

[5] The full text of RCW 60.04.226 provides, "Except as otherwise provided in RCW 60.04.061 or 60.04.221, any mortgage or deed of trust shall be prior to all liens, mortgages, deeds of trust, and other encumbrances which have not been recorded prior to the recording of the mortgage or deed of trust to the extent of all sums secured by the mortgage or deed of trust regardless of when the same are disbursed or whether the disbursements are obligatory."

owner, and prime contractor in such form as may be prescribed by the lender, or the order of a court of competent jurisdiction.

(7) *In the event a lender fails to abide by the provisions of subsections [(5)] and [(6)] of this section, then the mortgage, deed of trust, or other encumbrance securing the lender shall be subordinated to the lien of the potential lien claimant to the extent of the interim or construction financing wrongfully disbursed, but in no event more than the amount stated in the notice plus costs as fixed by the court, including reasonable attorneys' fees.*

RCW 60.04.221 (emphasis added) (revisor's note omitted). A related statute provides, "RCW . . . 60.04.011 through 60.04.226 . . . are to be liberally construed to provide security for all parties intended to be protected by their provisions." RCW 60.04.900.

*Creation of a "Reserve"*

¶14 The main issue here is whether, under RCW 60.04.221's stop notice provision, the Bank's creation of a "reserve" for VFC satisfies the requirement to "withhold from the next and subsequent draws the amount claimed to be due as stated in the notice." RCW 60.04.221(5). VFC argues that the Bank's $385,465.48 reservation from the full loan amount of $10,300,000.00, while fully funding all subsequent draw requests submitted by Soundview until declaring Soundview to be in default, violated the stop notice provision. The Bank argues that its reservation of the disputed sum against the remaining undisbursed portion of the $10,300,000.00 construction loan fulfilled its obligation under the stop notice provision.

¶15 When interpreting a statute, the court first looks to its plain language. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). "If a statute is clear on its face, its meaning is to be derived from the language of the statute alone." *Kilian v. Atkinson*, 147 Wn.2d 16, 20, 50 P.3d 638 (2002). This rule applies to mechanics' lien statutes. *Estate of Haselwood v. Bremerton Ice Arena, Inc.*, 166 Wn.2d 489,

498, 210 P.3d 308 (2009). Only where a statute is subject to more than one reasonable interpretation will a court resort to statutory construction, legislative history, and relevant case law for assistance in determining the legislature's intent. *Haselwood*, 166 Wn.2d at 498. " '[A] statute is not ambiguous merely because different interpretations are conceivable.' " *Agrilink Foods, Inc. v. Dep't of Revenue*, 153 Wn.2d 392, 396, 103 P.3d 1226 (2005) (quoting *State v. Hahn*, 83 Wn. App. 825, 831, 924 P.2d 392 (1996)). If "a party's lien is covered by chapter 60.04 RCW, the statute is to be liberally construed to provide security for all parties intended to be protected by its provisions." *Haselwood*, 166 Wn.2d at 498; RCW 60.04.900.

¶16 VFC claims specifically that the Bank, in creating a "reserve" out of the undisbursed funds that were never paid out to Soundview, failed to withhold the amount claimed to be due from "the next and subsequent draws," and instead merely made a bookkeeping entry establishing a reminder not to release the *final* $386,000.[6] Appellant's Br. at 2. VFC argues that this action violates the stop notice provision. This provision requires that upon receipt of a stop notice, the lender must withhold from the *next and subsequent draws* the amount claimed in the notice. RCW 60.04.221. RCW 60.04.011(3) defines "draws" as "periodic disburse-ments of interim or construction financing by a lender." "It is an axiom of statutory interpretation that where a term is defined we will use that definition." *United States v. Hoff-man*, 154 Wn.2d 730, 741, 116 P.3d 999 (2005). The ordinary meaning of "withhold" is "to desist or refrain from granting,

---

[6] Our review of the record confirms alert message notations in the Bank's file to "hold back $386,000 for lien for Village Framers." Pacific Continental Bank Executive Vice President and Chief Credit Officer Casey Hogan testified by declaration, "Upon the Bank's receipt of the Stop Notice the Bank notified the Borrower of the Bank's receipt of the Stop Notice. In accordance with the requirements of RCW 60.04.221 and because the Borrower disputed the validity of VFC's lien and Stop Notice, the Bank withheld $386,000 from loan funds available for disbursement to or for the benefit of the Borrower. At all material times since that date, the Bank has withheld disbursement of such Stop Notice funds, although the Bank did continue to advance other unrestricted loan proceeds for payment of non-contested invoices."

giving, or allowing : keep in one's possession or control : keep back." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2627 (2002). The common meaning of "next" is "immediately preceding or following in order (as of place, rank, relation, or time)" and the ordinary meaning of "subsequent" is "following in time" or "SUCCEEDING." WEBSTER'S, *supra*, at 1524, 2278. " '[W]e may discern the plain meaning of nontechnical statutory terms from their dictionary definitions.' " *State v. Kintz*, 169 Wn.2d 537, 547, 238 P.3d 470 (2010) (alteration in original) (quoting *State v. Cooper*, 156 Wn.2d 475, 480, 128 P.3d 1234 (2006)). When determining the meaning of undefined terms, courts "will consider the statute as a whole and provide such meaning to the term as is in harmony with other statutory provisions." *Heinsma v. City of Vancouver*, 144 Wn.2d 556, 564, 29 P.3d 709 (2001).

¶17 The stop notice provision's meaning is plain on its face. Under the circumstances here, it required the Bank to withhold the amount VFC claimed to be due from "the next and subsequent draws" to maintain its priority. RCW 60.04-.221(5). The legislature clearly intended lenders to withhold the amount of the claim from the "next and subsequent draw" requests until it either received notice from the claimant that the dispute was resolved or obtained from the borrower or general contractor a bond in favor of the claimant. *See* RCW 60.04.221(5). Or it could declare the borrower in default and immediately foreclose. *Town Concrete Pipe of Wash., Inc. v. Redford*, 43 Wn. App. 493, 717 P.2d 1384 (1986).[7]

¶18 VFC contends, "The Bank has complete control over whether it will maintain priority over lien claimants." Appellant's Br. at 17. We agree. In *Town Concrete*, we

---

[7] *Town Concrete* held that although not specifically provided by the stop notice statute, a lender may avoid the effect of the stop notice statute by foreclosing its mortgage and making no further loan advances. The court reasoned that nothing in the statute prevents such an option, that lien statutes are in derogation of the common law and must be strictly construed, and that the legislature's intent to provide additional protections for lien claimants is not violated by a strict interpretation of the statute. *Town Concrete*, 43 Wn. App. at 497.

discussed three options when a lender receives a stop notice:

> The stop notice provision, RCW 60.04.[221],[8] was devised to provide additional security to those who furnish labor or materials in the erection or improvement of buildings. Under the statute, a potential lien claimant may give notice to a construction lender that payment by the borrower is more than 5 days overdue. RCW 60.04.[221](2). *The lender then has three options*:
>
>> *First*, if the lender chooses to allow further draws upon the construction loan fund, he "shall withhold" funds to satisfy the stop notice from these "next and subsequent draws." *Second*, if the lender chooses to continue draws without withholding funds for the stop notice, he suffers the "penalty" of Section 2(6), and his mortgage is subordinated to the subsequent mechanics' lien of the stop notice claimant "to the extent of the interim or construction financing wrongfully disbursed, but in no event in an amount greater than the sums ultimately determined to be due the potential lien claimant by a court of competent jurisdiction, or more than the sum stated in the notice, whichever is less." *Third*, the lender may avoid the effect of the stop notice altogether by making no further loan advances and foreclosing his mortgage. In this last situation, the [potential lien claimant]'s only recourse is to his mechanics' lien which will have no enhanced priority by reason of the stop notice.

*Town Concrete*, 43 Wn. App. at 496-97 (emphasis added) (quoting Note, *Mechanics' Liens: The "Stop Notice" Comes to Washington*, 49 WASH. L. REV. 685, 695-96 (1974)). The Bank could have maintained its priority by (1) withholding the amount in arrears—$385,465.48—from the next and subsequent draws it issued, (2) requiring Soundview to post a bond for the amount of VFC's claim, or (3) suspending all further draws to Soundview and immediately foreclosing on its deed of trust. It is undisputed that the Bank did not seek or receive a bond to cover VFC's claim. Moreover, the Bank

---

[8] Former RCW 60.04.210 (1975), *repealed by* LAWS OF 1991, ch. 281, § 31.

failed to suspend all further draws. It subsequently advanced $1,147,868.00. Whether the Bank's deed of trust became subordinated to VFC's lien claim turns on whether the Bank complied with RCW 60.04.221(5)'s requirement that it withhold from the next and subsequent draws the funds necessary to satisfy the lien. The Bank claims it satisfied this requirement when it established a reserve in the amount of $386,000.00.

¶19 Because Soundview and VFC never resolved the lien dispute by agreement or by order of a court, the funds could not have been disbursed in accordance with RCW 60.04-.221(6). Indeed, the Bank terminated the line of credit and retained the "reserved" funds, using them for its own purpose contrary to VFC's RCW 60.04.221(7) priority lien.

¶20 Nothing in the record indicates the Bank documented the $386,000 as a draw on its books or shows an increase in the principal loaned to Soundview. Instead, the Bank reduced the maximum amount Soundview was eligible to draw on its future line of credit. When it terminated the line of credit, it failed to withhold the $386,000 pending agreement between Soundview and VFC or pending court order. Nor did it tender the funds to the court registry. The Bank treated the reserve of $386,000 as a mere obligation under the line of credit that was cancelled along with the line of credit. As a matter of law, the Bank failed to satisfy the requirements of RCW 60.04.221(5) and triggered subordination of its deed of trust under RCW 60.04.221(7).[9]

¶21 Finally, we reject the receiver's partial subordination assertion. Subsections (5) and (6) of RCW 60.04.221 obligate a construction lender that has received a stop notice to "withhold from [its borrower's] next and subsequent draws the amount claimed to be due." Subsection (7) requires, "In the event a lender fails to abide by the provisions of subsections [(5)] and [(6)] of this section, then

---

[9] Our review of the legislative history similarly shows no support for the Bank's contentions.

the . . . deed of trust . . . securing the lender shall be subordinated to the lien . . . ." RCW 60.04.221(7) (reviser's note omitted). We find nowhere in the plain meaning of the provision any support for the receiver's claim that RCW 60.04.221 requires a court to partition a lender's deed of trust securing exclusively construction financing and then to subordinate only a portion equal to the amount the lender wrongfully disbursed.[10] And as Representative Richard Kelley, author and cosponsor of this legislation, clearly explained when asked how the bill works, "If the lending institution fails to withhold *money*, it is done at the risk of losing [*its*] *priorities*." Floor Notes on ENGROSSED SUBSTITUTE H.B. 264, 43d Leg., Reg. Sess. (Wash. 1973) (emphasis added). Because the Bank violated RCW 60.04.221's stop notice provision, the Bank "loses its priority"—the entire deed of trust is subordinated to the lien.

¶22 For the reasons discussed above, we reverse the trial court's order granting summary judgment to the receiver and remand for further proceedings consistent with this opinion.[11]

*Attorney Fees*

¶23 The Bank requests an award of attorney fees pursuant to RCW 60.04.181(3). That statute provides that in a lien foreclosure action,

---

[10] We need not address the exception intended by the legislature that a lender's deed of trust be partitioned before subordination but only when the deed of trust secured both the acquisition and the improvement of real property. This exception is inapplicable here.

[11] We decline to grant VFC's request for entry of summary judgment in its favor because it withdrew its summary judgment motion below and because unresolved issues remain for trial court determination. Similarly, we decline to grant VFC's single sentence request, made for the first time on appeal, to impose a constructive trust on the $400,000 escrow fund. Because this issue was not raised below or briefed on appeal, we decline to address it. RAP 2.5(a); *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). "The purpose of this general rule is to give the trial court an opportunity to correct errors and avoid unnecessary retrials." *Postema v. Postema Enters., Inc.*, 118 Wn. App. 185, 193, 72 P.3d 1122 (2003); *see also Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) (declining to consider an inadequately briefed argument). And the trial court is in the best position to determine the merits of this request on proper briefing.

[t]he court may allow the prevailing party in the action, whether plaintiff or defendant, as part of the costs of the action, the moneys paid for recording the claim of lien, costs of title report, bond costs, and attorneys' fees and necessary expenses incurred by the attorney in the superior court, court of appeals, supreme court, or arbitration, as the court or arbitrator deems reasonable.

Because the Bank is not the prevailing party on appeal, it is not entitled to attorney fees under RCW 60.04.181(3).

## CONCLUSION

¶24 Because the Bank failed to withhold funds from draws provided to Soundview after receipt of VFC's stop notice, it failed to comply with RCW 60.04.221's stop notice provision. We reverse summary judgment in favor of the receiver and remand for further proceedings consistent with this opinion.

APPELWICK and SPEARMAN, JJ., concur.

Reconsideration denied May 14, 2012.

Review denied at 175 Wn.2d 1018 (2012).